## PHILIP SULLIVAN ET AL. *v.* LIBERTY MUTUAL FIRE INSURANCE COMPANY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 10, 1977—decision released February 7, 1978

*David M. Reilly, Jr.,* for the appellants (plaintiffs).

*Mark R. Kravitz,* with whom, on the brief, was *William J. Doyle,* for the appellee (defendant).

LONGO, J. The plaintiffs have appealed from a judgment denying their application for the appointment of a disinterested umpire for the purpose of determining a fire loss to property owned by the plaintiffs and insured by the defendant insurance

company. The court found the following undisputed facts: On March 22, 1976, the plaintiffs' house, located on Ward Street, New Haven, was damaged by fire. On April 15, 1976, the plaintiffs submitted sworn proofs of loss to the defendant and the defendant denied liability for the loss. In accordance with the terms of the defendant's insurance policy, which incorporated the provisions of § 38-98 of the General Statutes,[1] the plaintiffs made demand for an appraisal of the fire loss. Each party named an appraiser. The appraisers were unable to agree upon an umpire within the fifteen days required by § 38-98 because they were unable to agree upon the meaning of "actual cash value." The plaintiffs' appraiser contended that actual cash value is "replacement cost, less depreciation," while the defendant's appraiser claimed that "fair market value" at the time of the loss is the proper measure of actual cash value. Due to the disagreement the plaintiffs made an application to a judge of the Superior Court to appoint a disinterested umpire under the provisions of § 38-98 and under the terms of the fire insurance policy.

---

[1] General Statutes § 38-98 provides, in pertinent part: "Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. . . ."

The trial court, after hearing, denied the plaintiffs' application, concluding that the proper test to be applied in determining actual cash value, which is not defined in the statute or in the insurance policy, is one of law for a court and not one of fact for the appraisers or even an umpire. Otherwise, the court reasoned, if the parties were compelled to proceed with an appraisal without having actual cash value defined there would be a possibility of error by the appraisers which could impede the expeditious settlement of the claim. The parties stipulated[2] that the sole issue to be determined by the trial court was whether the plaintiffs were entitled to the appointment of an umpire.

The plaintiffs contend that under the terms of the contract of insurance and under the provisions of § 38-98 they are entitled to the appointment of an umpire as a matter of statutory right, enforceable after due hearing. On the other hand, the defendant argues, as decided by the trial court, that unless the statutory and contractual meaning of actual cash value is first defined by a court, the appraisers would be required to make a legal judgment, which they are neither authorized nor competent to make. We agree with the plaintiffs' claim.

The defendant correctly asserts that the scope of the appraisers' powers and duties is limited by the terms of the policy, by the statutory provisions of § 38-98, and by judicial precedent, solely to a determination of the amount of the actual cash value of the fire loss. It is well settled that this determina-

[2] The parties also agreed that the questions of waiver and estoppel due to the defendant's denial of coverage would be reserved for a further hearing, if any.

tion is ordinarily a question of fact which appraisers and umpires can decide upon their own experience and judgment, without taking evidence or hearing argument. See *Buck* v. *Morris Park, Inc.*, 153 Conn. 290, 293, 216 A.2d 187, appeal dismissed, 385 U.S. 2, 87 S. Ct. 33, 17 L. Ed. 2d 2; 45 C.J.S., Insurance, § 1123. It is also well recognized that in determining the amount of a fire loss, there are three tests in general use by courts and appraisers to determine "actual cash value": (1) Where property is of such nature that its market value can be readily determined, market value has frequently been applied as the test or criterion of "actual cash value" of the property at the time of loss; (2) "actual cash value" may be replacement or reproduction cost of the property lost, which is generally regarded as merely a limitation on the insurer's liability and not as a substantive measure of damages which the insured can invoke; and (3) under the so-called broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property might be considered by the trier of facts in determining "actual cash value" at the time of the loss. See 15 Couch, Insurance (2d Ed.) §§ 54:134—54:138. In this case the appraisers were unable to agree upon a test or standard to be applied and consequently were unable to agree upon an umpire. To resolve such disagreements is the purpose of the provision in § 38-98 for court appointment of a competent and disinterested umpire upon the request of the insured or the insurer. The mere possibility that the umpire or appraisers might commit errors of law or fact was not a proper ground for the court to deny the plaintiffs' application.

An insured is entitled to have a loss determined by the appraisal procedure required by statute and the terms of the insurance policy. Here, § 38-98 and the contract of insurance both provide that on failure to agree upon an umpire, then on request of the insured or the insurer "such umpire *shall* be selected by a judge of a court of record in the state in which the property covered is located"; the appraisers *"shall* then appraise the loss" and failing to agree *"shall* submit their differences, only, to the umpire." (Emphasis added.) There is no doubt about the use of the word "shall." It clearly is employed in its ordinary sense. The word "shall" connotes that the obligation is mandatory, as opposed to permissive. *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584; see 1A Sutherland, Statutory Construction (4th Ed.) § 25.04; 2A Sutherland, op. cit. § 57.16. We conclude that the court was required by § 38-98 and by the terms of the contract to appoint a disinterested umpire, and that failure to appoint constituted error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs and to appoint an umpire in accordance with their application.

In this opinion the other judges concurred.