Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2017 09:09 AM CST

Rosemary Henn, individually and on behalf
of others similarly situated, plaintiff, v.
American Family Mutual Insurance
Company, defendant.
___ N.W.2d ___

Filed February 17, 2017.    No. S-16-597.

1. **Insurance: Contracts.** A court interpreting an insurance policy must first determine, as a matter of law, whether the contract is ambiguous.
2. **Insurance: Contracts: Appeal and Error.** In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning.
3. ____: ____: ____. When an insurance contract is ambiguous, an appellate court will construe the policy in favor of the insured.
4. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings.
5. **Insurance: Contracts: Words and Phrases.** Regarding words in an insurance policy, the language should be considered not in accordance with what the insurer intended the words to mean but according to what a reasonable person in the position of the insured would have understood them to mean.
6. **Insurance: Contracts.** While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract.
7. **Insurance: Contracts: Words and Phrases.** There is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous.
8. ____: ____: ____. Actual cash value is not a substantive measure of damages, but, rather, a representation of the depreciated value of the property immediately prior to damages.

9. **Insurance: Contracts.** For purposes of indemnification, actual cash value must not equal the amount required to complete the repairs or replacement of the property. Instead, actual cash value is intended only to provide a depreciated amount of the replacement cost to start the repairs.

10. ____: ____. Under a replacement cost policy, the insured, not the insurer, is responsible for the cash difference necessary to replace the old property with the new property. And upon submitting the required materials for replacement cost value, the insured will receive the difference necessary to replace the old property with the new property.

11. ____: ____. Both materials and labor constitute relevant facts to consider when establishing the value of the property immediately prior to the loss.

12. ____: ____. Absent specific language in an insurance policy, a court may consider any relevant evidence in its calculation of actual cash value, including materials and labor.

13. ____: ____. An insured is properly indemnified when the amount calculated for actual cash value equals the depreciated value of the property just prior to the loss, which includes both materials and labor.

Certified Question from the U.S. District Court for the District of Nebraska. Judgment entered.

Eric R. Chandler, of Law Offices of Eric R. Chandler, P.C., L.L.O., and Erik D. Peterson and M. Austin Mehr, of Mehr, Fairbanks & Peterson Trial Lawyers, P.L.L.C., for plaintiff.

Bartholomew L. McLeay and Brooke H. McCarthy, of Kutak Rock, L.L.P., and Michael S. McCarthy and Marie E. Williams, of Faegre, Baker & Daniels, L.L.P., for defendant.

Daniel P. Chesire, of Lamson, Dugan & Murray, L.L.P., for amici curiae American Insurance Association et al.

Mark C. Laughlin and Robert W. Futhey, of Fraser Stryker, P.C., L.L.O., for amicus curiae State Farm Fire and Casualty Company.

Heavican, C.J., Wright, Cassel, Kelch, and Funke, JJ., and Inbody and Bishop, Judges.

Heavican, C.J.

## INTRODUCTION

The U.S. District Court for the District of Nebraska has certified the following question to this court: "May an insurer, in determining the 'actual cash value' of a covered loss, depreciate the cost of labor when the terms 'actual cash value' and 'depreciation' are not defined in the policy and the policy does not explicitly state that labor costs will be depreciated?" We answer this question in the affirmative.

The question arises from a putative class action filed in the U.S. District Court, in case No. 8:15CV257, involving a dispute over the interpretation of a homeowner's insurance policy. Rosemary Henn asserts claims for breach of contract, unjust enrichment, violations of Nebraska's Consumer Protection Act, fraudulent concealment, and equitable estoppel. Henn argues American Family Mutual Insurance Company (American Family) wrongfully failed to compensate her and others similarly situated by depreciating labor costs in calculation of actual cash value for loss or damage to a structure or dwelling under its homeowner's insurance policies.

The dispute centers on whether labor costs can be depreciated in determining the actual cash value of covered damaged property under a homeowner's insurance policy. The parties agree that actual cash value is replacement cost minus depreciation, but disagree as to whether the labor component can be depreciated.

No class has yet been certified, and progression of the case has been stayed pending the outcome of this certified question.

## BACKGROUND

The following facts were obtained from the briefs submitted by the parties and from the district court's certificate and memorandum order.

In September 2011, Henn submitted a homeowner's claim under her insurance policy issued by American Family. The claim was submitted due to damage that occurred to her home's roof vent caps, gutters, siding, fascia, screens, deck,

and air-conditioning unit during a hailstorm on August 18, 2011. The insurance policy, American Family's "Nebraska Homeowners Policy-Gold Star Special Deluxe Form" No. 26-BE4992-01, is a replacement cost policy. American Family determined that the hail loss was covered by Henn's policy.

The policy provides, in relevant part, that an insured may recover, following a covered loss, "the cost to repair the damaged portion or replace the damaged building, provided repairs to the damaged portion or replacement of the damaged building are completed," or "[i]f at the time of loss, . . . the building is not repaired or replaced, [American Family] will pay the actual cash value at the time of loss of the damaged portion of the building up to the limit applying to the building." Therefore, under the policy, the insured has two options for recovery following a covered loss: (1) receive "the actual cash value at the time of loss of the damaged portion of the building up to the limit applying to the building" or (2) receive the full replacement cost value upon completion of the repair or replacement of the damaged property.

Under both options, the insured will first receive an actual cash value payment. If the insured repairs or replaces the damaged property, the insured can recover the difference between the replacement cost value and actual cost value payments. If the insured does not repair or replace the damaged property, the insured is entitled to receive only the actual cash value. Payment under the replacement cost option is limited to the smallest of the cost to replace the property with like construction for similar use, the actual amount spent to repair or replace the property, or 120 percent of the limit applying to the damaged building.

The policy does not define "actual cash value" or depreciation, or describe the methods employed to calculate "actual cash value." The policy also does not explain how American Family determines the difference between replacement cost value and actual cost value. The policy states under the conditions section for actual cash value that

[i]f at the time of loss, the Increased Building Limit
Coverage as provided under the Supplementary Coverages
- Section I applies and the building is not repaired or
replaced, [American Family] will pay the actual cash
value at the time of loss of the damaged portion of the
building up to the limit applying to the building.

After inspecting the storm damage, American Family pro-
vided Henn with a written estimate that explained the cal-
culations for replacement cost value, actual cash value, and
depreciation for the claim. The written estimate defined actual
cash value as being "based on the cost to repair or replace the
damaged item with an item of like kind and quality, less depre-
ciation." The estimate further stated that "replacement cost"
was the "cost to repair the damaged item with an item of like
kind and quality, without deduction for depreciation." In the
estimate, American Family's adjuster determined that the cost
to repair and replace the damaged portions of Henn's home
with new materials would be $3,252.60. From this amount,
American Family subtracted $276.67 in depreciation, to arrive
at an actual cash value amount of $2,975.93. American Family
then subtracted Henn's $1,000 deductible, leaving her with
an actual cash value payment of $1,975.93. The depreciated
amount includes both material costs and labor costs. The esti-
mate did not show how much it depreciated from building
materials as opposed to labor.

American Family sent Henn a letter stating that Henn had
1 year from the date of the loss to complete the repairs and
receive any difference between the actual repair costs and the
actual cash value payment. Henn failed to make a claim for
payment of replacement costs.

Henn filed the current action in the district court for
Douglas County, Nebraska. American Family removed the
case to the U.S. District Court for the District of Nebraska
based on diversity of citizenship under 28 U.S.C. § 1332
(2012). American Family subsequently filed a motion for
summary judgment, arguing that the policy was unambiguous

and that the issues could be resolved as a matter of law. Henn contends that summary judgment was not proper, because "the term 'actual cash value' is ambiguous, that actual cash value should not include depreciation of labor, and [that] the policy provision should be construed in her favor."

The U.S. District Court found that "resolution of the motion involves a question of law in Nebraska on which there is no controlling precedent in the decisions of the Nebraska Supreme Court." The U.S. District Court certified the question to the Nebraska Supreme Court. American Family's motion for summary judgment is being held in abeyance until this court responds to the certified question.

Again, the question certified is: "May an insurer, in determining the 'actual cash value' of a covered loss, depreciate the cost of labor when the terms 'actual cash value' and 'depreciation' are not defined in the policy and the policy does not explicitly state that labor costs will be depreciated?"

## ANALYSIS

This court must determine whether the term "actual cash value" unambiguously allows for depreciation of labor in the insurance policy. Both parties agree that depreciation is an element of actual cash value. But Henn argues that the language in the policy does not unambiguously allow for labor depreciation and that American Family's depreciation of labor resulted in underindemnification of her loss.

Conversely, American Family argues that "actual cash value" as used in the policy is not ambiguous, because the term incorporates the concept of depreciation from the cost of repairs, which includes both materials and labor. American Family contends that actual cash value is merely an interim payment and that depreciation of both materials and labor properly indemnifies the insured.

[1-7] A court interpreting an insurance policy must first determine, as a matter of law, whether the contract is

ambiguous.[1] In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning.[2] But when an insurance contract is ambiguous, we will construe the policy in favor of the insured.[3] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings.[4] Regarding words in an insurance policy, the language should be considered not in accordance with what the insurer intended the words to mean but according to what a reasonable person in the position of the insured would have understood them to mean.[5] While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract.[6] There is no legal requirement that each word used in an insurance policy must be specifically defined in order to be unambiguous.[7]

Some background on how this court calculates actual cash value is helpful. This court has set forth three approaches to determining actual cash value: "(1) [W]here market value is easily determined, actual cash value is market value, (2) if there is no market value, replacement or reproduction

---

[1] *Reisig v. Allstate Ins. Co.*, 264 Neb. 74, 645 N.W.2d 544 (2002).

[2] *Olson v. Le Mars Mut. Ins. Co.*, 269 Neb. 800, 696 N.W.2d 453 (2005).

[3] *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014).

[4] *Van Kleek v. Farmers Ins. Exch.*, 289 Neb. 730, 857 N.W.2d 297 (2014).

[5] *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

[6] *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001).

[7] *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998).

cost may be used, (3) failing the other two tests, any evidence tending to formulate a correct estimate of value may be used."[8]

The first approach, market value, has been used by this court in several cases to calculate actual cash value.[9] This court has defined market value as "the amount for which property may be sold by a willing seller who is not compelled to sell it to a buyer who is willing but not compelled to buy it."[10] And in deciding market value, the jury "should consider the situation and condition of the property as it was at that time and all the other facts and circumstances shown by the evidence that affected or had a tendency to establish its value."[11]

Under the second approach, replacement or reproduction cost, this court has stated that "application of a depreciation factor would serve to indemnify the insured for the value of that which was lost, but no more."[12]

We have also defined the third approach, often referred to as the "broad evidence rule." This court found that it had "no particular quarrel" with calculation of actual cash value according to the following definition of the broad evidence rule:

"[I]n determining the actual cash value of the property involved they may consider every fact and circumstance which would logically tend to the formation of a correct estimate of the building's value, including the original cost, the economic value of the building, the income derived from the building's use, the age and condition of

[8] *Olson v. Le Mars Mut. Ins. Co., supra* note 2, 269 Neb. at 806, 696 N.W.2d at 458, citing *Sullivan v. Liberty Mutual Fire Ins. Co.*, 174 Conn. 229, 384 A.2d 384 (1978).

[9] See *id.*

[10] *Borden v. General Insurance Co.*, 157 Neb. 98, 113, 59 N.W.2d 141, 150 (1953).

[11] *Id.* at 114, 59 N.W.2d at 150.

[12] *Olson v. Le Mars Mut. Ins. Co., supra* note 2, 269 Neb. at 808, 696 N.W.2d at 459.

the building, its obsolescence, both structural and functional, its market value, and the depreciation and deterioration to which it has been subjected."[13]

We discussed actual cash value under the market value test and broad evidence rule in *Erin Rancho Motels v. United States F. & G. Co.*[14] We approved use of both the broad evidence rule and fair market value, noting that "actual cash value must still be measured as an economic unit, i.e., related to what, in terms of value, one could receive for his or her property."[15] We further explained that "[f]air market value is a term which has been used and is generally understood by experts and lay people alike, and which may be found by employing, if you will, the broad evidence rule."[16]

More recently, in *D & S Realty v. Markel Ins. Co.*,[17] this court again defined actual cash value and distinguished it from replacement cost value: "Actual cash value is the value of the property in its depreciated condition. The purpose of actual cash value coverage is indemnification. It is to make the insured whole, but never to benefit the insured because the loss occurred."

This court then stated that under a replacement cost policy, "where the cost to repair or replace is greater than the actual cash value, the insured, not the insurer, is responsible for the cash difference necessary to replace the old property with new property."[18] Further, this court stated that under a replacement cost policy, the actual cash value of the loss "can be used as seed money to start the repairs."[19]

---

[13] *Erin Rancho Motels v. United States F. & G. Co.*, 218 Neb. 9, 14, 352 N.W.2d 561, 564-65 (1984).

[14] *Erin Rancho Motels v. United States F. & G. Co., supra* note 13.

[15] *Id.* at 14, 352 N.W.2d at 565.

[16] *Id.*

[17] *D & S Realty v. Markel Ins. Co.*, 284 Neb. 1, 14, 816 N.W.2d 1, 11 (2012).

[18] *Id.*

[19] *Id.* at 15-16, 816 N.W.2d at 12.

*Olson v. Le Mars Mut. Ins. Co.*

In *Olson v. Le Mars Mut. Ins. Co.*,[20] this court further defined actual cash value under an actual cash value policy. The insurance policy at issue provided that it would pay actual cash value as of the time of loss or damage, and it did not include replacement cost coverage. We stated that "[a]s used in a property insurance policy, the phrase 'actual cash value' is a limitation on the amount of recovery for the protection of the insurer and not a substantive measure of damages."[21] And we further stated that "[a]pplying either a market value test or the broad evidence rule," the value of the insured building was an "economic unit."[22] However, this court ultimately held that

> under an actual cash value policy which does not expressly provide otherwise, an insurer may not deduct depreciation from the cost of repairing partial damage to insured property where the actual cash value of the property, as repaired, does not exceed its actual cash value at the time of the loss.[23]

Therefore, we held that payment of the full repair costs without a depreciation deduction would "restore the value of the insured property that existed immediately prior to the loss, but [would] not enhance that value."[24]

Henn contends that the holding in *Olson* is controlling in the current case. However, we find it largely distinguishable. Our holding in *Olson* applied to the unique set of facts in which the value of the insured property at the time of the loss was equal to the actual cash value of the property as repaired. Under those facts, had the court allowed for depreciation of the actual cash value, it would have been a lower value than

---

[20] *Olson v. Le Mars Mut. Ins. Co., supra* note 2.

[21] *Id.* at 806, 696 N.W.2d at 458.

[22] *Id.* at 807, 696 N.W.2d at 459.

[23] *Id.* at 810, 696 N.W.2d at 461.

[24] *Id.*

the value of the property prior to the time of the loss, which would have resulted in underindemnification. This court limited the application of the holding to "under an actual cash value policy" and to situations "where the actual cash value of the property, as repaired, does not exceed its actual cash value at the time of loss." But neither of these situations occurred in the current case; therefore, the holding in *Olson* that the policy must "expressly provide" for depreciation does not apply. We note, however, that this court's discussion of the definition of actual cash value in *Olson* remains applicable to the current case.

Henn argues that the flexible approach to calculating actual cash value employed by this court creates ambiguity in the term. We agree that this court uses three approaches in calculating actual cash value, but under each of the approaches, it is a well-accepted principle that "[a]ctual cash value is the value of the property in its depreciated condition."[25] As the parties concede, Nebraska law makes clear that the definition of "actual cash value" generally allows depreciation. But this court has not explicitly addressed depreciation of labor as opposed to materials, or addressed indemnification in terms of actual cash value.

## OTHER JURISDICTIONS

Both the market value test set forth in *D & S Realty* and the broad evidence rule first explained in *Erin Rancho Motels* consider all the other "facts and circumstances" shown by the evidence that affected or had a tendency to establish the property's value.[26] To answer whether all the other "facts and circumstances" include labor, we turn to cases from other jurisdictions that have addressed this issue.

---

[25] *D & S Realty v. Markel Ins. Co., supra* note 17, 284 Neb. at 14, 816 N.W.2d at 11.

[26] *Borden v. General Insurance Co., supra* note 10, 157 Neb. at 114, 59 N.W.2d at 150.

In *Redcorn v. State Farm Fire & Cas. Co.*,[27] a divided Oklahoma Supreme Court reasoned that depreciation of labor was appropriate under the broad evidence rule and that it did not lead to underindemnification. The court reasoned that labor could not be separated from the total amount that was depreciated, because

> [a] roof does not have a separate market value from the building it covers. The relevant evidence for deter- mining actual cash value for a roof would include cost of reproduction, the age of the roof, and the condition in which it has been maintained. A building is the prod- uct of both materials and labor. . . . Likewise, a roof is the product of materials and labor, and its age and condition are also relevant facts in setting the amount of a loss.[28]

Based on this reasoning, the court held that "indemnity is served by considering the age and condition of a roof, both materials and labor, in setting an amount of loss."[29] Furthermore, the court stated that "[t]o meet the goal of indemnity, [the insured] should be placed, as nearly as prac- ticable, in the same condition as he was in just prior to the insured loss."[30]

Applying the broad evidence rule, the court held that "a fact-finder is entitled to consider what the life of the destroyed roof, both materials and labor, would have been, as well as any other relevant evidence presented."[31] The court further explained that the insurance policy "insured a roof surface, not two components, material and labor. [The insured] did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor. To

---

[27] *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002).

[28] *Id.* at 1020.

[29] *Id.* at 1021.

[30] *Id.*

[31] *Id.*

construe the policy in such a manner would unjustly enrich the policy holder."[32]

The dissent in *Redcorn* disagreed, arguing instead that a roof "is not an integrated product . . . but a combination of a product (shingles) and a service (labor to install the shingles)" and that "[l]abor . . . is not logically depreciable."[33] Therefore, the dissent opined that "allowing [the insurer] to depreciate the cost of labor would leave [the insured] with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity."[34]

In *Adams v. Cameron Mut. Ins. Co.*,[35] the Supreme Court of Arkansas held that the term "actual cash value" was ambiguous in the actual cash value policy, and the court cited the *Redcorn* dissent in finding that labor could not be depreciated. The court stated that like the dissenters in *Redcorn*, it "simply cannot say that labor falls within that which can be depreciable."[36] In addition, the court stated that because it found that the term "actual cash value" was ambiguous, it must construe the policy against the insurer.

Similarly, in *Bailey v. State Farm Fire & Cas. Co.*,[37] the U.S. District Court for the Eastern District of Kentucky found that the *Redcorn* dissent was more persuasive. The court held that in determining actual cash value—which was not defined in the insurance policy—the insurer could not depreciate the labor component of replacement cost. The court stated that actual cash value was defined under Kentucky law as "'replacement cost of the property at the time of loss

---

[32] *Id.*

[33] *Id.* at 1022 (Boudreau, J., dissenting; Watt, V.C.J., and Summers, J., join).

[34] *Id.* at 1023.

[35] *Adams v. Cameron Mut. Ins. Co.*, 2013 Ark. 475, 430 S.W.3d 675 (Nov. 21, 2013).

[36] *Id.* at *6, 430 S.W.3d at 679.

[37] *Bailey v. State Farm Fire & Cas. Co.*, No. 14-53-HRW, 2015 WL 1401640 (E.D. Ky. Mar. 25, 2015) (memorandum opinion).

less depreciation.'"[38] And it stated that "[d]enying the distinct nature of labor as a component runs afoul [of] logic."[39] Based on the reasoning in the *Redcorn* dissent, the court held that "[t]o adequately indemnify its insureds, [the insurer] should pay the cost of materials, depreciated for wear and tear, plus the cost of their installation."[40]

Conversely, in *Papurello v. State Farm Fire & Cas. Co.*,[41] the U.S. District Court for the Western District of Pennsylvania held that the policy's plain language permitted the depreciation of labor as part of actual cash value. The court cited the majority's opinion in *Redcorn* that "'[a] building is the product of *both* materials and labor'"[42] and that the term "property" could not reasonably be interpreted as relating only to physical materials. Rather, the court stated that the "[insurer] did not promise at step one of the Policy to pay the present-day 'actual cash value' of whatever labor and taxes [the insureds] require to repair or replace their roof."[43] Instead, the value of the property suffered depreciation, and the insurer appropriately applied that depreciation to materials, taxes, and labor costs.

Similarly, in *Goff v. State Farm Florida Ins. Co.*,[44] the Florida District Court of Appeals held that the insurer could depreciate "overhead and profit" in a policy that did not define actual cash value. The court cited an American Bar Association publication which stated that "'following a loss, both actual cash value and the full replacement cost are determined. The difference between those figures is withheld as

---

[38] *Id.* at *5.

[39] *Id.* at *8.

[40] *Id.*

[41] *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746 (W.D. Pa. 2015).

[42] *Id*. at 770.

[43] *Id.*

[44] *Goff v. State Farm Florida Ins. Co.*, 999 So. 2d 684, 690 (Fla. App. 2008).

depreciation until the insured actually repairs or replaces the damaged structure.'"[45]

The *Goff* court also cited an Oklahoma Supreme Court case in which the court found that "'it was proper to depreciate both materials and labor when calculating the loss suffered by the insured.'"[46] The *Goff* court reasoned that "depreciation" included "overhead and profit."

In addition, the Indiana Supreme Court, in *Travelers Indem. Co. v. Armstrong*,[47] stated that the broad evidence rule was a "flexible rule" which "permits an appraiser or a court or a jury to consider any relevant factor." The court stated that "[u]nder the broad evidence rule, the parties were entitled to introduce evidence of 'every fact and circumstance which would logically tend to a formation of a correct estimate of the loss.'"[48] The court further addressed indemnity in terms of actual cash value and stated that "'[i]f the princip[le] of indemnity be adhered to, depreciation must be considered in loss adjustment so that the insured will not receive the equivalent of a new building for a loss of the old one.'"[49]

### LABOR CAN BE DEPRECIATED

[8,9] We cannot agree with the dissent in *Redcorn*, as set forth in Henn's argument, that the depreciation of labor is illogical because labor does not depreciate. Actual cash value, as defined by this court, is "not a substantive measure of damages,"[50] but, rather, a representation of the depreciated value of the property immediately prior to damages. This

---

[45] *Id*., quoting Leo John Jordan, *What Price Rebuilding? A Look at Replacement Cost Policies*, 19 The Brief 17 (Spring 1990).

[46] *Id.*, quoting *Branch v. Farmers Ins. Co.*, 55 P.3d 1023 (Okla. 2002).

[47] *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 356 (Ind. 1982).

[48] *Id.* at 357.

[49] *Id.* at 353.

[50] *Olson v. Le Mars Mut. Ins. Co., supra* note 2, 269 Neb. at 806, 696 N.W.2d at 458.

court's explanation of actual cash value under the replacement cost policy in *D & S Realty*[51] shows that for purposes of indemnification, actual cash value must not equal the amount required to complete the repairs or replacement of the property. Instead, actual cash value is intended only to provide a depreciated amount of the replacement cost to "start the repairs."[52]

[10] As we held in *D & S Realty*, it is "the insured, not the insurer," that "is responsible for the cash difference necessary to replace the old property with new property."[53] By distinguishing between the "lesser of actual cash value or the cost of repairing or replacing the damaged property,"[54] this court clarified that actual cash value must not equal the cost to repair or replace the damaged property. And upon submitting the required materials for replacement cost value, the insured will receive the difference necessary to replace the old property with the new property.

[11] As in *Redcorn*, this court has adopted the broad evidence rule. This court has also employed the market value approach. As established above, both approaches allow all relevant facts and circumstances to be considered when determining the actual cash value. We find that both materials and labor constitute relevant facts to consider when establishing the value of the property immediately prior to the loss.

[12] Therefore, as in the majority opinion in *Redcorn*, this court may consider any relevant evidence in its calculation of actual cash value, including materials and labor. We agree with the majority opinion in *Redcorn*, in that absent specific language in the policy, the insured does "not pay for a hybrid policy of actual cash value for roofing materials and

---

[51] *D & S Realty v. Markel Ins. Co., supra* note 17.

[52] *Id.* at 15-16, 816 N.W.2d at 12.

[53] *Id.* at 14, 816 N.W.2d at 11.

[54] *Id.*

replacement costs for labor."[55] The property is a product of both materials and labor.

This finding appears to be consistent with the interpretation of actual cash value set forth in a Nebraska Department of Insurance brochure applying depreciation to both materials and labor. The brochure on hail damage states that under actual cash value, "[i]f your roof was worth 75% of the value of a new roof, you will be entitled to 75% of the estimated cost to repair or replace the damaged area."[56] In other words, the percentage of depreciation is taken from the whole when calculating actual cash value.

[13] Unlike *Adams*,[57] Nebraska has a well-developed case law on the definition of actual cash value. We therefore find that the term is not ambiguous in the policy. The unambiguous definition of actual cash value is a depreciation of the whole. As such, the insured is not underindemnified by receiving the depreciated amount of both materials and labor. We agree with American Family that a payment of actual cash value that included the full cost of labor would amount to a prepayment of unearned benefits. We hold, as in the majority opinion in *Redcorn*, that an insured is properly indemnified when the amount calculated for actual cash value equals the depreciated value of the property just prior to the loss, which includes both materials and labor.

Henn argues that an insured is properly indemnified only when the materials are depreciated according to actual cash value and the labor is not depreciated pursuant to the replacement cost value. As in *Papurello*,[58] we do not see how this distinction can be made under the plain meaning of actual cash value in the policy. The policy does not state that the

---

[55] *Redcorn v. State Farm Fire & Cas. Co., supra* note 27, 55 P.3d at 1021.

[56] Neb. Dept. of Ins., *Do I Have Hail Damage on My Roof?* (rev. May 2012), http://www.doi.nebraska.gov/files/doc/out01121.pdf.

[57] *Adams v. Cameron Mut. Ins. Co., supra* note 35.

[58] *Papurello v. State Farm Fire & Cas. Co., supra* note 41.

insured will receive the actual cash value of the materials and the replacement cost value of the labor. As in *Redcorn*, Henn did not purchase a "hybrid policy" that would allow for this distinction. The policy does not distinguish between materials and labor, and we refuse to read that distinction into the policy.

Henn also argues that it is the historical practice of insurance companies to refrain from depreciating labor costs and that the "clear majority of courts to address labor depreciation in this context recognize that the cost of labor cannot be depreciated when calculating [actual cash value]."[59] However, we find that the texts cited by Henn fail to support the premise of any such historical practice.

In addition, while Henn cites to various courts that have found that the cost of labor cannot be depreciated, we do not find that it is a "clear majority," nor do we find that those cases are controlling under the current policy at issue. Instead, the Nebraska Department of Insurance brochure cited by American Family indicates that it is an accepted practice in Nebraska to depreciate from the whole.

We hold that payment of the full amount of labor would amount to a prepayment of benefits to which the insured is not yet entitled. Depreciating the whole is merely one way to arrive at a value that represents the depreciated value of the property to which the insured is entitled. We hold that payment of actual cash value, which depreciates both materials and labor, does not underindemnify the insured.

Therefore, under both the market value test and the broad evidence rule, all relevant evidence is considered in determining the value. Both materials and labor are elements that help establish the value of the property immediately prior to the time of loss. We hold that actual cash value applies to the insured property as a whole. We cannot agree with the distinction in

_____

[59] Brief for plaintiff at 17.

depreciation that Henn is attempting to read into the policy. As reasoned above, there is no ambiguity in the term "actual cash value."

## CONCLUSION

We find that the term "actual cash value" is unambiguous and that depreciation of labor does not lead to underindemnification. Therefore, we answer the certified question in the affirmative.

JUDGMENT ENTERED.

MILLER-LERMAN and STACY, JJ., not participating.