Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/03/2025 09:09 AM CDT

- 646 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

BETH A. FRENCH, APPELLANT, V. AUTO-OWNERS
INSURANCE COMPANY, APPELLEE.
___ N.W.3d ___

Filed May 27, 2025.    No. A-24-417.

1. **Insurance: Contracts.** Interpretation of an insurance policy is a question of law.
2. **Judgments: Appeal and Error.** In reviewing questions of law, an appellate court must reach its own conclusions independent of the lower court's conclusions.
3. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4. ____: ____. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
5. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial.
6. **Insurance: Contracts.** To determine whether coverage exists under an insurance policy, the first determination is whether there is an initial grant of coverage for the claimed loss. If so, it must then be determined whether any exclusion applies.

- 647 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

7. **Insurance: Contracts: Appeal and Error.** An appellate court's goal in interpreting insurance policy language is to give effect to each provision of the contract.

8. **Insurance: Contracts.** The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.

9. **Insurance: Contracts: Intent.** An insurance policy must be construed as any other contract to give effect to the parties' intentions at the time the contract was made.

Appeal from the District Court for Platte County: Jason M. Bergevin, Judge. Affirmed.

George H. Moyer, of Moyer & Moyer, for appellant.

Michael T. Gibbons, of Woodke & Gibbons, P.C., L.L.O., for appellee.

Riedmann, Chief Judge, and Bishop and Arterburn, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

Following a break in a water service line leading to an insured's premises, the insured sought recovery for her loss under a commercial building policy issued to her. The insurer denied coverage, and the insured filed suit. The district court for Platte County granted summary judgment in favor of the insurer. Because the loss was excluded from coverage, we affirm the district court's order.

## II. BACKGROUND

Beth A. French was the owner of Park Plaza, which is composed of residential apartments and commercial spaces. In November 2019, an underground water line servicing the building ruptured, resulting in the flooding of the building's basement. French subsequently filed a claim with her insurance provider, Auto-Owners Insurance Company (Auto-Owners).

Auto-Owners had issued a "Tailored Protection Insurance Policy" insuring Park Plaza and French, with effective dates

- 648 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

from July 5, 2019, to July 1, 2020. The policy included both commercial property coverage and commercial general liability coverage. At issue in this dispute is the commercial property coverage provisions of the policy. As is relevant to the present case, the building and personal property coverage form provided coverage as follows:

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

. . .

**a. Building**, meaning the building or structure described in the Declarations[;]

. . . .

**b. Your Business Personal Property**[;]

. . . .

**c. Personal Property Of Others** . . . .

The declarations identified covered "Causes of Loss" to include "Basic Group I," "Basic Group II," "Windstorm/Hail," "Special," and "Theft." The "Causes of Loss - Special Form" provided:

**A. COVERED CAUSES OF LOSS**

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.**, Exclusions; or

**2.** Limited in Section **C.**, Limitations that follow.

Auto-Owners denied French's claim, reasoning that coverage was excluded under an exclusion in the "Special Form." In relevant part, this exclusion, hereinafter referred to as the "water exclusion," states:

**B. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or

- 649 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

**g. Water**

. . . .

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings[.]

. . . .

This exclusion applies regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused.

After her claim was denied, French filed an action in the district court for breach of the insurance contract, requesting that Auto-Owners be ordered to pay $78,659.74 to cover her loss.

During discovery, Jake Wacha, the local utility superintendent, was deposed and his deposition was received at the summary judgment hearing. Wacha testified that he had received a call in November 2019 that water was coming up from the sidewalk outside the building. Upon his arrival, he observed "water bubbling out of the sidewalk" and from "a portion of the street." Wacha and his team began investigating the leak and eventually discovered a rupture in the service line connecting the building to the city's water main, which was located under the street, adjacent to the sidewalk outside the building. Wacha also inspected the basement of the building and saw water was entering from the floor and wall, and from "gaps and spaces in the [building's] foundation."

French employed her brother-in-law as a handyman for Park Plaza. In an affidavit received at the summary judgment hearing, he averred that the water appeared to have entered the basement through a hole between the foundation and a concrete block wall. French's deposition was also received, and

- 650 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

she agreed the water appeared to be "coming down the wall" in the basement. But ultimately, she stated that no one had ever explained to her how the water entered the building and that she did not know where the water was entering from.

Auto-Owners filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law, because the evidence adduced during discovery demonstrated there was no genuine dispute regarding the cause of the water damage, and that such cause was excluded under the policy.

At the hearing on the summary judgment motion, Auto-Owners argued that the water exclusion excluded coverage because the claimed damages resulted from water under the ground surface that pressed on or flowed or seeped through the foundation, walls, and basement, as specifically excluded in the policy. It preemptively argued that French's position that the exclusion applied only to naturally occurring ground water was refuted by the language of the water exclusion that made it applicable whether "caused by an act of nature or is otherwise caused."

As foreshadowed by Auto-Owners, French argued that the water exclusion applied only to naturally occurring ground water. She further argued that a specific provision of the insurance policy, which provides an extension of insurance coverage, provided coverage for her claims, hereinafter referred to as the "water damage extension." The provision states:

### F. ADDITIONAL COVERAGE EXTENSIONS

. . . .

### 2. Water Damage, Other Liquids, Powder Or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

- 651 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

. . . .

## G. DEFINITIONS

. . . .

**2.** "Specified causes of loss" [includes] water damage.

. . . .

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance . . . , that is located on the described premises and contains water or steam.

French also argued that this extension and the water exclusion were contradictory, making the phrase "water under the ground surface" ambiguous; thus, the ambiguity should be resolved in her favor.

The district court granted Auto-Owners' motion. It found the water exclusion, which excluded coverage for loss caused by water under the ground surface, was not limited to ground water as suggested by French. Rather, it applied to loss caused by the water from the ruptured service line and was excluded from coverage.

The district court also rejected French's argument that the water damage extension provided coverage because that extension provided coverage for the breaking apart or cracking of plumbing systems located on the premises and the water service line that ruptured was located outside the building.

French now appeals.

### III. ASSIGNMENTS OF ERROR

French assigns, restated, that the district court erred in (1) granting the motion for summary judgment, (2) failing to consider the water service line as an appurtenance to the premise, (3) failing to consider the "Utilities Failure" endorsement as affording coverage, (4) failing to consider the "Debris Removal" rider as affording coverage, and (5) failing to consider the "'Backup From Sewers and Drains'" rider as affording coverage.

- 652 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

## IV. STANDARD OF REVIEW

[1,2] Interpretation of an insurance policy is a question of law. *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020). In reviewing questions of law, an appellate court must reach its own conclusions independent of the lower court's conclusions. *Id*.

[3,4] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id*.

## V. ANALYSIS

### 1. DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT

French assigns the district court erred in granting Auto-Owners' summary judgment motion. For the reasons stated herein, we reject this assigned error.

[5] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id*. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue

- 653 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

of fact that prevents judgment as a matter of law. *Id*. But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id*.

[6] An insurance policy is a contract between the insurer and the insured, whose respective rights and obligations must be determined by contract principles. *Rose v. American Family Ins. Co*., 315 Neb. 302, 995 N.W.2d 650 (2023). To determine whether coverage exists under an insurance policy, we must first determine whether there is an initial grant of coverage for the claimed loss. *Cizek Homes v. Columbia Nat. Ins. Co*., 22 Neb. App. 361, 853 N.W.2d 28 (2014). If so, we must then determine whether any exclusion applies. *Id*. An exclusion in an insurance policy is a limitation of liability, or a carving out of certain types of loss, to which the insurance coverage never applied. *State Farm Fire & Cas. Co. v. TFG Enters.*, 308 Neb. 460, 954 N.W.2d 899 (2021). To determine whether an exclusion applies, the terms of the insurance policy must be interpreted. *Id*.

We first note that there is no dispute that French suffered loss to "Covered Property" under the policy. The sole issue before us is whether the damages were the result of a "Covered Causes of Loss." In determining that issue, neither party disputes that the "Causes of Loss - Special Form" applies. Therefore, we review the Special Form to determine whether it is ambiguous and, if coverage is provided, whether an exclusion applies.

### (a) Water Damage Extension Does Not Create Ambiguity or Provide Coverage

French argues that the water damage extension creates an ambiguity and provides coverage for her loss. She contends that because the "Special Form" defines "[w]ater damage" as an accidental discharge of water from a plumbing system on the described premises, her loss is a covered loss. She asserts

- 654 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

that interpreting the water exclusion to apply regardless of whether the loss is caused by an act of nature or is otherwise caused makes the water exclusion and water damage extension contradictory. Thus, the ambiguity should be resolved in favor of coverage. We find no ambiguity.

A court interpreting an insurance policy must first determine, as a matter of law, whether the contract is ambiguous. *Henn v. American Family Mut. Ins. Co.*, 295 Neb. 859, 894 N.W.2d 179 (2017). Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Id*. But when an insurance contract is ambiguous, we will construe the policy in favor of the insured. *Id*. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings. *Id*.

Although the district court determined the water damage extension was inapplicable because the service line was not located on the premises, we reject French's argument that an ambiguity exists based on a reading of the policy itself. The water damage extension granting additional coverage states, "If loss or damage caused by or resulting from *covered water* . . . occurs, we will also pay the cost to tear out and replace any part of the building . . . to repair damage to the system . . . from which the water . . . escapes." (Emphasis supplied.) The plain language of the extension makes it applicable only when the loss is caused by covered water. Then, and only then, does the policy also cover the cost to tear out and replace the part of the building necessary to repair damage from the faulty system.

French overlooks this prefatory language, focusing instead on the definition of water damage, and argues the water damage extension conflicts with the water exclusion, thereby creating an ambiguity. To resolve the ambiguity, she argues that the water exclusion is limited to loss caused by natural water and that the water damage extension applies to water originating from a plumbing system leak, such as in the service line here.

- 655 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

[7,8] French's interpretation, however, reads out of the water damage extension the phrase limiting its applicability to "covered water" and ignores the phrase in the water exclusion making it applicable whether the loss is caused "by an act of nature or is otherwise caused." The goal in interpreting insurance policy language is to give effect to each provision of the contract. See *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014). The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004) (citing 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 101:7 (1997); Annot., 30 A.L.R.5th 170 (1995)). When the water exclusion is properly read in conjunction with the water damage exclusion, no conflict exists. The water exclusion precludes coverage for loss caused by water entering below the ground, whereas the water damage extension provides additional coverage when a water loss from a plumbing system not excluded from coverage occurs.

Based on the plain language of the water damage extension, we find it inapplicable to French's claim and it does not create an ambiguity within the policy. It is therefore unnecessary to discuss whether the service line was an appurtenance to the building as argued by French. We agree with the district court that the water damage extension does not apply, albeit for a different reason. Because the extension does not apply, there is no ambiguity in the policy.

(b) Water Exclusion Excludes Coverage

Auto-Owners argued, and the district court found, that the water exclusion excluded coverage for French's loss. The water exclusion excludes coverage for damage caused by "[w]ater under the ground surface pressing on, or flowing or seeping through: **(a)** Foundations, walls, floors or paved surfaces; **(b)** Basements; or **(c)** Doors, windows or other openings." There is no dispute that the damage was caused by water

- 656 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

from the underground service line coming through the wall of the building's foundation.

French contends, however, that the phrase "[w]ater under the ground surface" is limited to natural ground water. To reach such a conclusion, however, one must disregard the language of the exclusion that states it "applies regardless of whether [the water under the ground surface] is caused by an act of nature or is otherwise caused." Furthermore, there is no modifier prior to the word "water," which indicates the term is not limited to certain types of water.

[9] An insurance policy must be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Rose v. American Family Ins. Co.*, 315 Neb. 302, 995 N.W.2d 650 (2023). When the terms of an insurance contract are clear, a court gives them their plain and ordinary meaning as a reasonable person in the insured's position would understand them. *State Farm Fire & Cas. Co. v. TFG Enters.*, 308 Neb. 460, 954 N.W.2d 899 (2021).

Our reading of the policy leads to the conclusion that the water exclusion applies to water under the ground from whatever source and is not limited to naturally occurring ground water. Although French cites numerous cases from other jurisdictions to support her arguments, our independent review leads us to conclude that the meaning of the exclusion can be determined from its clear and unambiguous language. After reviewing the policy, we conclude that under its plain language, the disputed water exclusion operates to exclude damage caused by "[w]ater under the ground surface" without regard for the source of the water. Because there is no dispute French's loss was caused by "[w]ater under the ground surface," her claim is excluded from coverage.

### 2. District Court Did Not Err by Failing to Consider Alternative Policy Provisions

French argues the district court erred by failing to consider whether other policy provisions provided coverage. We disagree.

- 657 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

(a) Utility Services Failure

French's policy contained coverage up to $50,000 for "Utility Services Failure." She argues an exception to an exclusion within the "Causes of Loss - Special Form" is a "well disguised extension of coverage," which provides coverage for the damage to Park Plaza. Brief for appellant at 24. She cites language of the exclusion that reads:

**B. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following[:]

. . . .

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply. Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

*However, if the failure or surge of power, or the failure of communication, water or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*

(Emphasis supplied.)

French argues the court failed to "take a closer look at this coverage" and contends the exception provides coverage for her claim because the damage to Park Plaza was caused by a failure of her water utility. Brief for appellant at 24.

- 658 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

Contrary to French's assertions, our review of the record shows that Auto-Owners issued an endorsement that amended this policy exclusion. The endorsement stated, in relevant part:

> This endorsement modifies insurance provided under the following:
>
> . . . .
>
> CAUSES OF LOSS - SPECIAL FORM
>
> . . . .
>
> **C. Exclusions**
>
> . . . .
>
> **2. Power or Other Utility Grid Failure**
>
> *Under CAUSES OF LOSS - SPECIAL FORM, B. EXCLUSIONS, exclusion **1.e. Utility Services** is deleted and replaced by the following:*
>
> **e. Utility Services**
>
> We shall not pay for loss or damage caused by or resulting from the failure to supply "communication supply services", "power supply services" or "water supply services" from any regional or national grid.

(Emphasis supplied.)

On appeal, French's argument concerning "Utility Services Failure" is limited to the district court's failure to consider the specific language of the original exclusion, which we have clarified was deleted and replaced by an endorsement. The district court could not have erred in failing to consider the effect of language that had been deleted from the policy and thus had no effect. We reject her argument.

#### (b) Remaining Policy Provisions

French assigns as error that the district court failed to consider whether the "Debris Removal rider" or the "rider . . . for 'Backup From Sewers and Drains'" would provide her with coverage. However, her arguments concerning these assignments merely consist of a recitation of the relevant policy language and a generalized statement that Auto-Owners owes her payment under these provisions. There is no further

- 659 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
FRENCH v. AUTO-OWNERS INS. CO.
Cite as 33 Neb. App. 646

discussion regarding the assigned errors. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. The district court did not err in granting Auto-Owners' motion for summary judgment because there was no genuine issue of material fact. The plain language of the insurance policy excluded coverage for the loss.

AFFIRMED.