STATE OF MINNESOTA

IN SUPREME COURT

A15-0724

Certified Question                                                    Wright, J.
United States District Court,                    Took no part, Stras and Hudson, JJ.
District of Minnesota

Brent R. Wilcox, et al.,

                    Plaintiffs/Appellants,

vs.                                                        Filed:  February 10, 2016
                                                           Office of Appellate Courts
State Farm Fire and Casualty Company,

                    Defendant/Respondent.

_____

T. Joseph Snodgrass, Shawn M. Raiter, Paula Duggan Vraa, Kelly A. Lelo, Larson King, LLP, Saint Paul, Minnesota, for appellants.

Todd A. Noteboom, W. Anders Folk, Jeffrey G. Mason, Stinson Leonard Street LLP, Minneapolis, Minnesota, for respondent.

Dale O. Thornsjo, Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota, for amicus curiae Insurance Federation of Minnesota.

William M. Hart, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota; and

Stephen E. Goldman, Wystan M. Ackerman, Robinson & Cole, LLP, Hartford, Connecticut, for amicus curiae American Insurance Association.

_____

1

When a homeowner's insurance policy does not define the term "actual cash value," it is for the trier of fact to determine whether labor costs embedded in the cost of repairing or replacing damaged property are depreciable for the purpose of calculating the actual cash value of a covered loss.

Certified question, as reformulated, answered in the affirmative.

## O P I N I O N

WRIGHT, Justice.

This certified question arises out of a putative class action lawsuit filed by appellants Brent and Leah Wilcox (the Wilcoxes) against respondent State Farm Fire and Casualty Company (State Farm). The matter was removed to federal district court. The Wilcoxes alleged that State Farm breached the terms of the Wilcoxes' homeowners insurance policy when calculating the actual cash value of damaged property. Specifically, the Wilcoxes challenge State Farm's practice of depreciating labor costs embedded in the cost of repairing or replacing damaged property. The district court certified a question to this court. We accepted the question, reformulating it as follows:

> When a homeowner's insurance policy does not define the term "actual cash value," may an insurer depreciate the cost of labor in determining the "actual cash value" of a covered loss when the estimated cost to repair or replace the damaged property includes both materials and embedded labor components?

Having reviewed the parties' arguments and our decision in *Brooks Realty, Inc. v. Aetna Insurance Co.*, 276 Minn. 245, 149 N.W.2d 494 (1967), we conclude that the appropriate method for calculating actual cash value presents an issue of *fact* to be

2

decided by an appraisal panel or a jury. Thus, we reformulate the certified question and hold that, absent specific language in the insurance policy that identifies a method of calculating actual cash value, the trier of fact must determine whether depreciation of embedded labor components "logically tend[s] to the formation of a correct estimate of the loss," *id.* at 254, 149 N.W.2d at 500 (quoting *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 904 (N.Y. 1928)).

## I.

The Wilcoxes' homeowners insurance policy provides that State Farm will pay "only the actual cash value at the time of the loss of the damaged part of the property" until the property has been repaired or replaced, at which time State Farm will pay the full repair or replacement cost. The policy neither defines "actual cash value" nor describes the methods that may be employed to calculate actual cash value.

After the Wilcoxes' home was damaged by hail, State Farm provided the Wilcoxes with a written estimate that calculated the actual cash value of the Wilcoxes' loss. To estimate the actual cash value of the damaged property, State Farm first calculated the replacement costs of individual items, such as roof flashing, siding, fascia, gutters, and window screens. Next, State Farm subtracted the pre-loss depreciation of some, but not all, individual items. For example, State Farm depreciated the cost of removing and replacing certain materials, such as siding. State Farm did not depreciate the cost of the new siding separately from the cost of the labor required to install the new siding on the home. Rather, State Farm calculated the removal and replacement of the siding as a single cost, then depreciated the removal-and-replacement cost as a whole.

3

We refer to the cost of labor to repair or replace the damaged property as "embedded labor costs."[1]

The Wilcoxes filed a putative class action lawsuit, alleging that State Farm's practice of depreciating embedded labor costs breaches State Farm's duty to indemnify the insured for the actual cash value of the damaged property. State Farm removed the case to federal district court on diversity jurisdiction grounds. Following removal, State Farm moved to dismiss the Wilcoxes' breach-of-contract claim, arguing that embedded-labor-cost depreciation is lawful under our precedent of *Brooks Realty*, 276 Minn. at 253-55, 149 N.W.2d at 500-01.

The magistrate judge concluded that labor depreciation is not permitted when an insurance contract does not define "actual cash value" and recommended that the district court deny State Farm's motion to dismiss. *Wilcox v. State Farm Fire & Cas. Co.*, Civ. No. 14-2798 (RHK/FLN), 2015 WL 927093, at *5 (D. Minn. Jan. 16, 2015) (report and recommendation). In the alternative, the magistrate judge recommended that the district court certify the following question to this court:

---

[1]   It is not clear from the record why State Farm chose to depreciate some items that contained embedded labor components, but not others. For example, State Farm depreciated the cost of staining the deck, but not the cost of cleaning the deck. It is beyond the scope of the certified question for us to attempt to discern the difference between staining and cleaning for the purpose of embedded-labor-cost depreciation. Whether there is a sound rationale for this distinction is a question best reserved for the trier of fact.

> May an insurer, in determining the "actual cash value" of a covered loss under an indemnity insurance policy, depreciate the costs of labor when the term "actual cash value" is not defined in the policy?

*Id.* at *6. The district court elected to certify the question. *Wilcox v. State Farm Fire & Cas. Co.*, Civ. No. 14-2798 (RHK/FLN), 2015 WL 927342, at *1 (D. Minn. Mar. 4, 2015).

We "may answer a question of law certified to [us] by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn. Stat. § 480.065, subd. 3 (2014); *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 541 (Minn. 2014). We review certified questions de novo, *Lyon Fin. Servs.*, 848 N.W.2d at 541, and may reformulate the question, Minn. Stat. § 480.065, subd. 4 (2014), particularly when doing so allows us to answer the question "with an unqualified yes or no," *Minn. Citizens Concerned for Life, Inc. v. Kelley*, 698 N.W.2d 424, 430 (Minn. 2005).

When we accepted the certified question, we reformulated it to clarify that the certified question pertains only to cases in which "the estimated cost to repair or replace the damaged property includes both materials and embedded labor components." Upon further review, we conclude that it is necessary to reformulate the question again. The question certified by the district court is whether an *insurer* may depreciate embedded labor costs when calculating the actual cash value of damaged property. Our precedent, however, is not conducive to a strictly affirmative or negative answer to that question. In *Brooks Realty*, we determined that the appropriate method for calculating actual cash

5

value is an issue of fact to be decided by an appraisal panel or a jury. *See* 276 Minn. at 255, 149 N.W.2d at 501. Accordingly, we reformulate the certified question as follows:

> When a homeowner's insurance policy does not define the term "actual cash value," may the trier of fact consider labor-cost depreciation in determining the "actual cash value" of a covered loss when the estimated cost to repair or replace the damaged property includes both materials and embedded labor components?
>
> We answer the certified question, as reformulated, in the affirmative.

## II.

The Wilcoxes argue that we should answer the certified question in the negative because State Farm's policy language is ambiguous. An insurance policy is ambiguous when it is subject to at least two competing reasonable interpretations. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). The Wilcoxes do not advance a reasonable interpretation of the phrase "actual cash value" that would categorically exclude embedded-labor-cost depreciation under every circumstance. Rather, the Wilcoxes ask us to find ambiguity from extrinsic sources, including litigation regarding actual-cash-value policies in other jurisdictions. Although extrinsic evidence may *support* a finding of ambiguity when insurance contract language is ambiguous on its face, *Orren v. Phoenix Ins. Co.*, 288 Minn. 225, 229, 179 N.W.2d 166, 169 (1970), we generally do not rely on extrinsic evidence to *establish* contractual ambiguity, *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995).[2]

---

[2] After oral argument, the Wilcoxes moved to supplement the record with a 2015 policy form recently filed by State Farm in Illinois that purportedly clarifies whether labor is depreciable for the purpose of calculating "actual cash value." Because

(Footnote continued on next page.)

The term "actual cash value" is not ambiguous. "Actual cash value" is a legal term of art that refers to the "actual loss" sustained by the insured. *See Brooks Realty*, 276 Minn. at 253-55, 149 N.W.2d at 500-01 (holding that the insured was entitled to recover no more than the "actual loss" of a partially destroyed building and discussing methods of calculating "actual cash value"). The issue presented by this certified question is what methods may be employed to calculate the "actual loss."

There are three methods that are used by different jurisdictions to calculate the actual cash value of damaged property: (1) the market value at the time of the damage; (2) the replacement or reproduction cost of the property; and (3) the broad evidence rule, which rejects a rigid adherence to either approach in favor of allowing the trier of fact to weigh multiple relevant factors, including *both* market value *and* repair or reproduction cost. *Id.* at 253, 149 N.W.2d at 500. In *Brooks Realty*, we adopted the broad evidence rule, concluding that the breadth of discretion provided to the trier of fact under the broad evidence rule would best "effectuate complete indemnity" of the insured. *Id.* at 254, 149 N.W.2d at 500 (quoting *McAnarney*, 159 N.E. at 904).

The broad evidence rule articulated in *Brooks Realty* is a flexible approach that allows the trier of fact to consider "every fact and circumstance which would logically tend to the formation of a correct estimate of the loss." *Id.* at 254, 149 N.W.2d at 500 (quoting *McAnarney*, 159 N.E. at 905). Relevant facts and circumstances considered

(Footnote continued from previous page.)
we do not rely on extrinsic evidence to establish contractual ambiguity, we deny the Wilcoxes' motion to supplement the record.

7

under the broad evidence rule may include the original cost of the property, the market value of the property at the time of the loss, the cost of reconstruction, the cost of removing debris, the amount of salvage, and the potential remaining uses of the property. *See id.* at 254, 149 N.W.2d at 500. The jury also may consider the opinions on value given by expert witnesses, such as appraisers. *See id.* at 254, 149 N.W.2d at 500.

Although *Brooks Realty* does not specifically discuss embedded-labor-cost depreciation, nothing in *Brooks Realty* categorically forecloses the possibility of embedded-labor-cost depreciation. Simply put, the broad evidence rule does not dictate whether labor is depreciable or is not depreciable. Rather, under the broad evidence rule, embedded-labor-cost depreciation is one factor that the trier of fact may *consider* and weigh among other factors to determine the actual cash value of the damaged property. The logical conclusion of *Brooks Realty* is that certain embedded labor costs *may* be depreciable, depending on the facts and circumstances of the particular case.

The magistrate judge concluded that embedded-labor-cost depreciation is not a factor that may be considered under *Brooks Realty* because embedded-labor-cost depreciation does not "logically" aid the trier of fact in determining actual cash value. *Wilcox*, 2015 WL 927093, at *5. We are not persuaded that depreciation of embedded labor costs is so illogical that it may never be considered. But whether embedded-labor-cost depreciation is logical or helpful to the trier of fact is ultimately a question of fact, not law. The appraisal of real estate includes elements of both art and science. *See* Appraisal Institute, *The Appraisal of Real Estate* 2 (14th ed. 2013) ("Implicit in the traditional definition of *appraisal* is the idea that an appraisal is someone's opinion,

8

rather than an undeniable fact.").  It is not the role of the judiciary to define best practices for appraisers without regard for the facts and circumstances of the case presented.  Thus, arguments about whether labor-cost depreciation is "logical" according to accepted methods of appraisal in a given case are best presented to an appraisal panel or via expert testimony before a jury.

We acknowledge that a black-letter rule that categorically excludes or requires embedded-labor-cost depreciation would be simpler to administer, but in *Brooks Realty* we adopted the flexible broad evidence rule in order to effectuate indemnity in the fairest manner "even though it . . . involve[s] the sacrifice of administrative convenience and of simplicity."  276 Minn. at 255, 149 N.W.2d at 501 (quoting James C. Bonbright & David Katz, *Valuation of Property to Measure Fire Insurance Losses*, 29 Col. L. Rev. 857, 899 (1929)).  Moreover, insurers have the option of identifying methods of calculating actual cash value—including whether embedded labor costs are depreciable—in the plain language of their policies.  State Farm did not do so here.

## III.

To summarize, we answer in the affirmative the certified question as reformulated in this opinion.  When a homeowner's insurance policy does not define the term "actual cash value" or otherwise state whether embedded labor costs are depreciable for the purpose of calculating actual cash value, the trier of fact may consider embedded-labor-cost depreciation when such evidence logically tends to establish the actual cash value of a covered loss.  Embedded-labor-cost depreciation, however, is only one of many factors

to be considered by the trier of fact; and its relevance depends on the facts and circumstances of the particular case.

Certified question, as reformulated, answered in the affirmative.


STRAS, J., took no part in the consideration or decision of this case.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.