IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2018 Session

## GREGORY J. LAMMERT, ET AL. v. AUTO-OWNERS (MUTUAL) INSURANCE COMPANY

**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 3:17-cv-00819   Waverly D. Crenshaw, Jr., Chief Judge**

———————————————————

**No. M2017-02546-SC-R23-CV**

———————————————————

The United States District Court for the Middle District of Tennessee has submitted a certified question of law pursuant to Tennessee Supreme Court Rule 23 regarding the interpretation of two insurance policies: "Under Tennessee law, may an insurer in making an actual cash value payment withhold a portion of repair labor as depreciation when the policy (1) defines actual cash value as 'the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss,' or (2) states that 'actual cash value includes a deduction for depreciation?'"  Based on Tennessee law regarding the interpretation of insurance contracts, we conclude that the language in the policies is ambiguous and must be construed in favor of the insured parties.  Therefore, we answer the district court's question in the negative: The insurer may not withhold a portion of repair labor as depreciation.

### Tenn. Sup. Ct. R. 23 Certified Question of Law

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

J. Brandon McWherter, Franklin, Tennessee, T. Joseph Snodgrass, St. Paul, Minnesota, and David McMullan, Jr., Lexington, Mississippi, for the petitioners, Gregory J. Lammert, Jamie Lammert, Larry Reasons, and Susan Reasons.

John S. Hicks and Charles Covington McLaurin, Nashville, Tennessee, and Todd A. Noteboom and Jeffrey G. Mason, Minneapolis, Minnesota, for the respondent, Auto-Owners (Mutual) Insurance Company.

John E. Quinn, Nashville, Tennessee, for the amici curiae, American Insurance Association, National Association of Mutual Insurance Companies, and Property Casualty Insurers Association of America.

William F. Merlin, Jr., Tampa, Florida, for the amicus curiae, United Policyholders.

## OPINION

In 2017, Petitioners[1] Gregory J. Lammert, Jamie Lammert, Larry Reasons, and Susan Reasons ("the homeowners") filed a putative class-action suit against Respondent Auto-Owners (Mutual) Insurance Company ("Auto-Owners"), their property insurance company, for breach of contract.[2] When Auto-Owners moved to dismiss the complaint, the homeowners opposed the motion to dismiss and contemporaneously requested that the district court consider certifying a question of law to this Court to resolve the issue of whether the cost of repair and replacement labor can be depreciated when calculating the actual cash value of a property using the replacement-cost-less-depreciation method of calculation. The district court certified the question to this Court on December 22, 2017. The facts set forth herein are derived from the district court's certification order and its accompanying memorandum opinion. *See Embraer Aircraft Maint. Servs., Inc. v. AeroCentury Corp.*, 538 S.W.3d 404, 407 (Tenn. 2017) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 621 (Tenn. 2009)).

The Lammerts owned a home and other structures in Nashville that were insured with Auto-Owners under a "Dwelling Insurance Policy." Some of the Lammerts' buildings were damaged in a hail storm on May 10, 2016. They filed a claim with Auto-Owners, who informed them that the claim would be settled on an actual cash basis. Using a replacement-cost-less-depreciation method, Auto-Owners calculated that it would cost $12,146.55 to repair and replace the damage with new materials. After subtracting $2,160.19 in depreciation, Auto-Owners informed the Lammerts that the actual cash value of their property was $9,986.36. After the Lammerts inquired about the depreciation, Auto-Owners confirmed that both labor and materials had been depreciated.

---

[1] Under section 6 of Tennessee Supreme Court Rule 23, "The party designated by the certifying court as the moving party shall be referred to as the petitioner and the party adverse to the petitioner shall be referred to as the respondent."

[2] Procedural history is derived from the briefs filed in this case because the district court order did not include these details.

The Reasons' home is located in Jackson, Tennessee, and the Reasons insured their house and related structures through Auto-Owners under a "Homeowners Insurance Policy." The property was damaged twice, once by hail in November 2016 and again by wind in March 2017. They filed claims for each loss, which Auto-Owners accepted. When Auto-Owners calculated its obligation to the Reasons, it used the replacement-cost-less-depreciation method and deducted depreciation for both labor and materials when calculating the actual cash value.

The parties disagree on the interpretation of the insurance policies, with the homeowners arguing that Auto-Owners should not have depreciated the cost of the labor to repair and replace the damaged property when calculating the actual cash value of the respective properties. The district court determined that this is a question of state law for which there is no controlling precedent and that the resolution of the question will determine the outcome of the putative class action; therefore, it certified the following question to this Court pursuant to our Rule 23[3]:

> Under Tennessee law, may an insurer in making an actual cash value payment withhold a portion of repair labor as depreciation when the policy (1) defines actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," or (2) states that "actual cash value includes a deduction for depreciation"?

## ANALYSIS

### *Standard of Review*

This question concerns the interpretation of insurance policies. In general, we "construe insurance contracts in the same manner as any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). "The language of the policy

---

[3] Section 1 of Tennessee Supreme Court Rule 23 states:

> The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

must be taken and understood in its plain, ordinary and popular sense." *Id.* "In addition, contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (citing *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993)). Nonetheless, "[a] strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

*Arguments of the Parties*

The question presented in this case concerns whether a portion of the cost of labor to repair and replace damaged property can be deducted from the total replacement cost when calculating the actual cash value of a property. The two policies in this case contain different language. The Lammerts' policy defines actual cash value as "the cost to replace damaged property with new property of similar quality and features reduced by the amount of depreciation applicable to the damaged property immediately prior to the loss," while the Reasons' policy does not define actual cash value but states that actual cash value includes a deduction for depreciation. The parties agree that under both policies, the method used to calculate the actual cash value is replacement cost less depreciation. Importantly, neither policy specifically mentions labor costs.

The homeowners contend that the language in the Lammerts' policy unambiguously limits depreciation to the cost of the replacement materials by use of the terms "damaged property" and "prior to the loss." According to them, "damaged property" eliminates labor costs because labor is intangible, and "prior to the loss" likewise eliminates labor costs because the labor costs at issue are post-loss costs. The homeowners also point to the definition of depreciation in the policy—"a decrease in value because of age, wear, obsolescence or market value"—to show that labor cannot be depreciated because it does not age, wear out, become obsolete, or (generally speaking) decrease in market value.[4] The homeowners further argue that the language in the Reasons' policy is ambiguous and should be construed in their favor because labor is not depreciable. Auto-Owners maintains that neither policy is ambiguous and that depreciation of a property is taken from the total replacement cost, which includes both labor and materials.

---

[4] This definition is not included in the district court's order or its memorandum opinion. However, the policy in question is attached to the homeowners' brief *in toto*. While attachments to appellate briefs are generally not considered part of the record, *see* Tenn. R. App. P. 13(c), in this situation, the policy is clearly part of the record of the trial court and would have been in the record before this Court had we required the record, *see* Tenn. Sup. Ct. R. 23, § 5. Therefore, we will consider the policy as a whole for purposes of our analysis.

- 4 -

*Background*

Central to the discussion in this opinion are the concepts of indemnity, actual cash value, and depreciation. This Court in *Braddock v. Memphis Fire Insurance Corp.*, 493 S.W.2d 453, 459–60 (Tenn. 1973), explained that insurance contracts are contracts of indemnity, meaning that the purpose of the insurance contract "is to reimburse the insured; to restore him as nearly as possible to the position he was in before the loss." Accordingly, if an insured were to make a profit on a loss by recovering the cost of a new roof for a damaged roof that was fifteen years old, then "[t]he ends of indemnity would not have been served." *Id.* at 460. On the other hand, if an insured were able to replace a loss "with a substitute identical in kind and quality" then "complete indemnity" would be accomplished. *McAnarney v. Newark Fire Ins. Co.*, 159 N.E. 902, 904 (N.Y. 1928). Because such a substitution is not generally possible when the damaged article is, for example, a fifteen-year-old roof, indemnity is instead accomplished through recovery of the actual cash value of a damaged property.

The generally accepted definition of "actual cash value" is "actual value expressed in terms of money." *See Third Nat'l Bank v. Am. Equitable Ins. Co. of New York*, 178 S.W.2d 915, 924 (Tenn. Ct. App. 1943). However, there are multiple methods for determining actual cash value, including market value, replacement cost less depreciation, and the broad evidence rule. *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 443 (N.J. 1978). The New Jersey Supreme Court provided an excellent analysis of each method in *Elberon*:

> Market value is generally defined as the price a willing buyer would pay a willing seller, at a fair and [b]ona fide sale by private contract, neither being under any compulsion . . . . But there is a problem in that a building ordinarily has no recognized market value independent of the parcel of property in entirety, land and building together . . . .

> Replacement cost less depreciation has the advantage of relative definiteness. It is also easily ascertained. However, it is inflexible, and this characteristic often results in excessive recovery. Many structures today have a high replacement value because of the inflated cost of building materials even though their true commercial value represented by rentals, prospective profits, usefulness to the present owner, location and age is considerably less . . . .

> The problem of excessive recovery under the replacement cost less depreciation rule together with the occasional uncertainty of market value

prompted development of what is now the most widely accepted rule, generally denominated as the "broad evidence rule[,]" [which the New York Court of Appeals defined as follows:]

. . . .

> Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject.

*Elberon*, 389 A.2d at 443-44 (internal citations omitted) (quoting *McAnarny*, 159 N.E. at 905).

Regarding depreciation, Black's Law Dictionary defines depreciation as "[a] reduction in the value or price of something; specif[ically] a decline in an asset's value because of use, wear, obsolescence, or age." Depreciation, *Black's Law Dictionary* (10th ed. 2014), *available at* Westlaw. "Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss." *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1020 (Okla. 2002).

In this case, the parties agree on the method for calculating actual cash value—replacement cost less depreciation. What they disagree on is whether depreciation applies only to the materials or to both materials and labor. The homeowners claim that applying depreciation to both materials and labor defeats the indemnity purpose of insurance by not making the homeowners whole, while Auto-Owners counters that applying depreciation only to materials results in a windfall to the homeowners, thus also defeating the purpose of indemnity.

The following hypothetical illustrates the dilemma. Suppose that laminate flooring with half of its useful life remaining is damaged by a sewer backup and that the homeowner has an insurance policy providing that the insurance company will cover the actual cash value of damaged property, calculated by deducting depreciation from the replacement cost. Further suppose that it would cost $10,000 to replace the floor, with

$5,000 in labor costs and $5,000 in material costs. If depreciation is deducted from material costs alone, then the actual cash value for the floor is $7,500. If depreciation is deducted from the total replacement cost, then the actual cash value of the floor is $5,000.

This discussion about the depreciation of labor costs is not occurring in a vacuum. Both sides have presented many cases supporting their divergent positions.[5] We will highlight a few of the more noteworthy opinions, beginning with the Oklahoma Supreme Court case *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017 (Okla. 2002).

In that case, the homeowner's roof was damaged by weather, and State Farm issued a payment for the actual cash value of the roof, calculated using the replacement cost less depreciation method. *Redcorn,* 55 P.3d at 1019. The policy did not define the term "actual cash value." *Id.* The majority of the Oklahoma Supreme Court (five justices) ruled that it was appropriate for the insurance company to consider "the age and condition of a roof, both materials and labor, in setting an amount of loss." *Id.* at 1021. Because Oklahoma follows the "broad evidence" rule, the Oklahoma Supreme Court stated that "a fact-finder is entitled to consider what the life of the destroyed roof, both materials and labor, would have been, as well as any other relevant evidence presented." *Id.* The reasoning is essentially that everything can be considered under the broad evidence rule, so any depreciation of labor should also be *considered*. However, the Oklahoma Supreme Court went further and also ruled that labor *must* be depreciated to prevent overindemnification. *Id.* The majority opinion explained that the homeowner "insured a roof surface, not two components, material and labor. He did not pay for a hybrid policy of actual cash value for roofing materials and replacement costs for labor. To construe the policy in such a manner would unjustly enrich the policy holder." *Id.*

The *Redcorn* dissenters, three of the eight justices on the panel (one justice was recused), would have held that labor costs cannot be depreciated. *Id.* at 1022 (Boudreau, J., dissenting). Justice Boudreau redefined the issue presented to ask "whether depreciating the cost of labor to replace Redcorn's roof *logically tends* to establish the correct estimate of the actual cash value of the roof at the time of the loss." *Id.* Justice Boudreau reasoned that a roof is not an integrated product but rather "a combination of a product (shingles) and a service (labor to install the shingles)." *Id.* He readily agreed

---

[5] The following is a non-exhaustive list of cases in favor of the insured: *Titan Exteriors, Inc. v. Certain Underwriters at Lloyd's, London*, 297 F. Supp. 3d 628 (N.D. Miss. 2018); *Arnold v. State Farm Fire and Cas. Co.*, 268 F. Supp. 3d 1297 (S.D. Ala. 2017); *Brown v. Travelers Cas. Ins. Co. of America.*, No. 15-50-ART, 2016 WL 1644342 (E.D. Ky. Apr. 25, 2016); *Lains v. Am. Family Mut. Ins. Co.*, No. C14-1982-JCC, 2016 WL 4533075 (W.D. Wash. Feb. 9, 2016). The following is a non-exhaustive list of cases in favor of the insurance companies: *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536 (10th Cir. 2017); *In re: State Farm Fire and Cas. Co.*, 872 F.3d 567 (8th Cir. 2017); *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179 (Neb. 2017).

that shingles are depreciable because they "lose value due to wear and tear," but he concluded that labor is not depreciable because labor does not "lose value due to wear and tear[, or] lose value over time." *Id.* Justice Boudreau concluded that "allowing State Farm to depreciate the cost of labor would leave Redcorn with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity." *Id.* at 1023. Justice Summers, in a separate dissenting opinion, succinctly stated the following:

> Before the damage the insured had on his house a roof with sixteen-year-old shingles. After the damage the insured is contractually entitled to have on his house sixteen-year-old shingles, or their value in money. He should not bear any of the cost of installing them, because that would deprive him of that for which he contracted-being made whole as if the damage had not occurred.

*Id.* (Summers, J., dissenting).

A decade later, the issue came before the Arkansas Supreme Court in *Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d 675 (Ark. 2013), *superseded by statute*, Ark. Code Ann. § 23-88-106(a)(2). In that case, the Arkansas Supreme Court determined that both parties presented tenable interpretations of the term "actual cash value," thus making the term ambiguous. *Id.* at 678. The majority opinion then stated that it agreed more with the *Redcorn* dissenters than with the majority and concluded that labor was not depreciable. *Id.* at 678-79. Some years later, however, the Arkansas legislature enacted Arkansas Statute section 23-88-106, which specifically included the cost of labor in its definition of an expense depreciation, effectively abrogating *Adams*.

Two other state supreme courts have addressed this issue, Nebraska and Minnesota. The Nebraska Supreme Court in *Henn v. American Family Mutual Insurance Co.*, 894 N.W.2d 179 (Neb. 2017), sided with the Oklahoma Supreme Court majority by reasoning that "property is a product of both materials and labor" and holding that proper indemnification occurs when both labor and materials are depreciated from the replacement costs. *Id.* at 189. The court agreed with the defendant insurance company that "a payment of actual cash value that included the full cost of labor would amount to a prepayment of unearned benefits." *Id.* at 190. The opinion also discussed the fact that Nebraska utilized both the market value and the broad evidence rule for determining actual cash value and noted that both methods allow for the consideration of all facts and circumstances related to value. *Id.* at 189.

The Minnesota Supreme Court took a third approach to answering the issue by determining that the depreciation of labor costs is an issue of fact rather than law. *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016). The court had

previously adopted the broad evidence rule in *Brooks Realty, Inc. v. Aetna Insurance Co.*, 149 N.W.2d 494 (Minn. 1967), "in order to effectuate indemnity in the fairest manner," and in *Wilcox*, the court held that the "logical conclusion of *Brooks Realty* is that certain embedded labor costs *may* be depreciable, depending on the facts and circumstances of the particular case." *Wilcox*, 874 N.W.2d at 785.

Three federal circuit courts of appeals have also addressed this issue based on the state law of the cases under consideration. The Eighth Circuit in *In re State Farm Fire and Casualty Co.* denied class certification in a lawsuit out of Missouri, reasoning that there were no predominate common facts because the issue of whether State Farm's methodology for calculating actual cash value could "only be determined based on all the facts surrounding a particular insured's partial loss." *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 577 (8th Cir. 2017). The Eighth Circuit also reversed the district court because it did not address "whether depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating" the actual cash value of the property. *Id.* at 576. The same circuit reached a different result when deciding a case based on Arkansas law. In *Stuart v. State Farm Fire and Casualty Co.*, the Eighth Circuit affirmed the class certification because under the *Adams* opinion, labor was never to be depreciated when calculating actual cash value based on the replacement-cost-less-depreciation method. *Stuart*, 910 F.3d 371, 375-76 (8th Cir. 2018). The court explained:

> There is no need for a jury to evaluate conflicting estimates based on different methodologies; the parties agreed on a methodology and the only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified. Arkansas law under *Adams* differs from Missouri law in that it explicitly prohibited insurers from depreciating the costs of labor when using this formula.

*Id.* at 376.

The Tenth Circuit, in a case applying Kansas Law, considered whether the district court appropriately granted summary judgment in favor of the insurance company on the grounds that labor depreciation was allowed under Kansas law. *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 537-38 (10th Cir. 2017). The Tenth Circuit upheld the district court's decision, holding that a reasonably prudent insured would expect depreciation to apply to the whole cost of replacing an asset rather than "an unorthodox depreciation method" that involves treating materials and labor differently. *Id.* at 540.

The most recent appellate case to address the issue before us was decided by the Sixth Circuit Court of Appeals during the pendency of this case, *Hicks v. State Farm Fire*

*& Casualty Co.*, 751 F. App'x 703 (6th Cir. 2018). In that case, the Sixth Circuit concluded that under Kentucky law, the term "actual cash value" was ambiguous, not because it was undefined but because the word "depreciation" as used in the statutory definition of "actual cash value" was itself ambiguous. *Id.* at 708-10. Because the parties presented two reasonable interpretations of the term "depreciation" in the context of the policy—to allow for depreciation of labor and to allow for depreciation of materials only—the term was deemed ambiguous, and the insurance contract was construed strictly against the insurance company. *Id.* at 710. The Sixth Circuit noted that the cases cited by State Farm in favor of its position "come primarily from states where the broad evidence rule applies or where the policies at issue expressly define ACV." *Id.* On the other hand, in states prescribing a replacement cost less depreciation method, the courts tended to rule in favor of the insured. *Id.* at 710-11.

We also note that some state insurance departments have addressed this issue. California's insurance regulations, for instance, specifically state that "the expense of labor necessary to repair, rebuild or replace covered property is not a component of physical depreciation and shall not be subject to depreciation or betterment." Cal. Code Regs. tit. 10, § 2695.9(f)(1) (2019). The Vermont Department of Financial Regulation Insurance Bulletin No. 184 prohibits the depreciation of repair and replacement labor. Susan L. Donegan, Comm'r, *Property Loss Claims: No Labor Depreciation*, Vt. Dep't of Fin. Regulation (May 1, 2015), *available at* https://dfr.vermont.gov/sites/finreg/files/regbul/dfr-bulletin-insurance-184.pdf. On the other hand, Mississippi Insurance Department Bulletin 2017-8 states that there is no statutory prohibition to labor depreciation in that state but that "the insurer should clearly provide for the depreciation of labor in the insurance policy." Mike Chaney, Comm'r, *Depreciation of Labor Expenses in Property Loss Claims*, Miss. Ins. Dep't (Aug. 4, 2017), *available at* https://www.mid.ms.gov/legal/bulletins/20178bul.pdf.

*Application*

Auto-Owners argues that Tennessee is a broad evidence state and that this court should follow other broad evidence states in concluding that labor is depreciable. First, we note that this Court has never adopted the broad evidence rule. In *Braddock*, this Court merely acknowledged that the broad evidence rule and the replacement-cost-less-depreciation method both accomplished indemnity. *Braddock*, 493 S.W.2d at 460. Moreover, whether Tennessee is a broad evidence state is not at issue because in this case, as the homeowners point out, the parties agreed that the actual cash value was to be calculated based on the replacement cost method.[6]

---

[6] We also note that after the claims were filed in this case, the Tennessee Department of Insurance promulgated a regulation specifying that the replacement cost less depreciation method was to

In the end, this case turns on our standard for interpreting insurance contracts because both parties have presented plausible interpretations of the policies, neither of which explicitly states whether labor expenses are depreciable when calculating the actual cash value. On the one hand, the homeowners' position that labor is not depreciable is well-taken. "Depreciation in insurance law is not the type that is charged off the books of a business establishment, but rather it is the actual deterioration of a structure by reason of age, and physical wear and tear, computed at the time of the loss." *Redcorn,* 55 P.3d at 1020. With this understanding, it is reasonable that a homeowner would understand that depreciation would only be applicable to material goods that can age and experience wear and tear. It is also reasonable that a homeowner, knowing that replacement costs include both labor and materials to rebuild a roof, would believe that the insurance company would only apply depreciation to the physical materials, those things that actually deteriorated. Auto-Owners argues that the homeowners' interpretation is not reasonable because depreciation is a numerical factor to be applied to the replacement cost to calculate the actual cash value and is not reflective of literal deterioration.

In reaching our conclusion, we must keep in mind that "the terms of a contract of insurance are to be construed according to their plain, ordinary, popular sense unless they have acquired a technical sense in commercial usage." *Swindler v. St. Paul Fire & Marine Ins. Co.*, 444 S.W.2d 147, 148 (Tenn. 1969) (citations omitted). However, the technical sense must be clearly conveyed in the policy itself:

> In our view, an insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy. Policy language should be given its plain meaning, unless a technical meaning is clearly provided in the insurance policy.

*Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996) (abandoning the distinction between "accidental means" and "accidental results" because "it is inconceivable that the average insured would understand the fine distinction"). Moreover, when language is ambiguous, it is to be "construed against the insurance company and in favor of the insured." *Id.*

Here, Auto-Owners argues for a technical definition of depreciation that is not evident on the face of either policy. Taking the term in its ordinary sense, it applies to

---

be used when calculating actual cash value. Tenn. Comp. R. & Regs. 0780-01-05-.10 (effective Oct. 2017).

physical deterioration, which is the meaning attributed to it by the homeowners. As this Court has previously stated, "if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." *Garrison*, 377 S.W.3d at 664. Therefore, construing the policy language in favor of the insured, depreciation can only be applied to the cost of materials, not to labor costs.

Auto-Owners also contends that if the homeowners' interpretation is correct, then indemnity is not accomplished because instead of receiving the actual value of their property in terms of money, the insured would never receive less than the cost of the labor, even if the labor was worth more than the actual property prior to the loss. The homeowners, however, argue that depreciating labor costs would underindemnify the insureds because they would bear the out-of-pocket costs of reinstalling the damaged asset. They would agree with Oklahoma's Justice Summers, who wrote in his dissenting opinion in *Redcorn* that Redcorn was "contractually entitled to have on his house sixteen-year-old shingles, or their value in money. He should not bear any of the cost of installing them because that would deprive him of that for which he contracted-being made whole as if the damage had not occurred." *Redcorn*, 55 P.3d at 1023 (Summers, J., dissenting).

Ultimately, it is not necessary for this Court to reach the decision of whether labor can logically depreciate or whether indemnity is accomplished. It is enough that we find the contracts ambiguous and that under our standard of review, the interpretation of the insured must prevail. We conclude that the answer to the district court's certified question is no, the insurance company cannot withhold a portion of the labor costs as depreciation under either policy.

## CONCLUSION

We conclude that the language regarding depreciation in the policies in question is ambiguous. Under Tennessee law, ambiguities in insurance contracts are strictly construed against the insurance companies and in favor of the insured. Therefore, with the insured's interpretation controlling, labor may not be depreciated when the insurance company calculates the actual cash value of a property using the replacement cost less depreciation method.

The Clerk is directed to transmit a copy of this opinion to the United States District Court for the Middle District of Tennessee in accordance with Tennessee Supreme Court Rule 23, section 8. Costs in this Court are taxed to Auto-Owners, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE