IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**GERALD WALKER, III, AND ADA WALKER,**
*Plaintiffs,*

*v.*

**AUTO-OWNERS INSURANCE COMPANY, A FOREIGN COMPANY,**
*Defendant.*

———————

No. CV-21-0236-CQ
Filed: September 27, 2022

———————

Certified Questions from the
United States District Court for the District of Arizona
The Honorable Cindy K. Jorgenson, Judge
No. CIV 20-449-TUC-CKJ
**QUESTIONS ANSWERED**

———————

COUNSEL:

Thomas Joseph Snodgrass (argued), Snodgrass Law LLC, Minneapolis, MN; Robert D. Ryan, Law Offices of Robert D. Ryan, PLC, Phoenix, Attorneys for Gerald and Ada Walker

Todd A. Noteboom (argued), Stinson LLP, Minneapolis, MN; Sharon W. Ng, Stinson LLP, Phoenix, Attorneys for Auto-Owners Insurance Company

Thomas B. Dixon, Dixon Law Offices, P.L.C., Phoenix, Attorney for Amicus Curiae United Policyholders

Gena L. Sluga and Katharine A. Myers, Christian, Dichter & Sluga, P.C., Phoenix, Attorneys for Amici Curiae American Property Casualty Insurance Association and National Association of Mutual Insurance Companies

———————

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.

─────────────

JUSTICE KING, Opinion of the Court:

**¶1**         The United States District Court for the District of Arizona certified two questions to this Court: (1) When a homeowner's insurance policy does not define the terms "actual cash value" or "depreciation," may an insurer depreciate the costs of both materials and labor in determining the actual cash value of a covered loss?; and (2) Is the broad evidence rule applicable in Arizona such that an insurer and/or fact finder may consider labor depreciation as a pertinent factor in determining actual cash value?[1]

**¶2**         The answer to each question is no, pursuant to the terms of the homeowner's insurance policy before us.    However, we do not categorically preclude application of the broad evidence rule with respect to other homeowners' insurance policies where appropriate.

## I.        BACKGROUND

**¶3**         Gerald and Ada Walker (the "Walkers") purchased the Homeowners Insurance Policy (the "Policy") from Auto-Owners Insurance Company ("Auto-Owners"), covering a house the Walkers owned in Tucson from December 15, 2018, through December 15, 2019.   Section 1 of the Policy, entitled "PROPERTY PROTECTION," described "HOW LOSSES ARE SETTLED."    Therein, the Policy provided, in relevant part:

Loss to covered property will be settled as follows:

. . .

─────────────

[1] "Actual cash value" is also referred to as "ACV."

(2) If the damaged covered property is insured under Coverage A – Dwelling or Coverage B – Other Structures . . . , **we** will pay as follows:

(a) If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, **we** will pay the full cost to repair or replace the damaged part of such covered property. No deduction will be made for depreciation. In no event shall **we** pay more than the smallest of:

1) the limit of insurance applying to the damaged covered property;

2) the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

3) the amount actually spent to repair or replace the damaged covered property.

(b) If at the time of loss, the limit of insurance applying to the damaged covered property is less than 80% of the full replacement cost of that covered property, **we** will pay the greater of either:

1) the actual cash value of the damaged covered property; or

2) the cost to repair or replace the covered property, less the deductible amount, multiplied by the ratio of the limit of insurance applying to the damaged covered property to 80% of its full replacement cost. No deduction will be made for depreciation.

. . .

3

> If **you** do not repair or replace the damaged covered property, **we** shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation.

(Emphasis in original). The Policy does not define the terms "actual cash value" or "depreciation."

¶4        Although Auto-Owners endorses some of its homeowners' insurance policies with Form 57911, it did not do so with the Walkers' Policy.   Form 57911 defines "actual cash value" and "depreciation" as follows:

1. Actual cash value means the cost to repair or replace lost or damaged covered property with new property of similar quality and features reduced by the amount of depreciation applicable to the lost or damaged covered property immediately prior to the loss.

2. Depreciation means a decrease in value because of age, wear, obsolescence or market value and includes . . . *the cost of* materials, *labor* and services . . . necessary to repair or replace lost or damaged covered property.

(Emphasis added).

¶5        On May 28, 2019, an accidental water discharge from an appliance damaged walls and floors in several rooms in the Walkers' house. The Walkers submitted a claim under the Policy.   Auto-Owners accepted coverage for the loss.

¶6        The Walkers' Policy contained replacement cost coverage (also known as "replacement cost value" or "RCV"), which Auto-Owners would pay if the insured chose to "repair or replace the damaged covered property."   The Policy also provided an actual cash value option, which is the provision that applied to the Walkers' covered loss here: "If **you** do not repair or replace the damaged covered property, **we** shall pay the actual cash value of the property at the time of loss.   Actual cash value includes a

4

deduction for depreciation." (Emphasis in original). Auto-Owners depreciated both materials and labor when calculating the actual cash value of the Walkers' covered loss.

¶7 The Walkers filed a complaint in the United States District Court for the District of Arizona, on behalf of themselves and similarly situated class members, alleging breach of contract and asking for declaratory and injunctive relief. The Walkers alleged Auto-Owners underpaid them and other similarly situated insureds by depreciating both materials and labor when calculating property damage claims under their homeowners' insurance policies.

¶8 Auto-Owners filed a motion to dismiss, claiming the Policy allows it to deduct "'depreciation' when estimating the value of 'the property,' and never distinguishes between materials and labor," and thus Auto-Owners may deduct both materials and labor when determining actual cash value. Auto-Owners also argued that "although Arizona case law regarding [actual cash value] is sparse," it believed "the Arizona Supreme Court would likely adopt the 'broad evidence rule' for determining" actual cash value. To resolve the motion, the district court certified the above-stated questions to us. Observing that no prior decision of this Court had addressed these questions and that clarification is warranted, we agreed to answer them. *See* A.R.S. § 12-1861; Ariz. R. Sup. Ct. 27.

## II.    DISCUSSION

### A. Depreciation of both Materials and Labor when Determining Actual Cash Value under the Policy

¶9 We must determine whether Arizona law permits Auto-Owners, consistent with the terms of the Policy, to depreciate the costs of both materials and labor when determining the actual cash value of the Walkers' covered loss.[2] We begin with an explanation of the difference

---

2 When discussing the depreciation of labor, we are referring to future labor—for example, the cost of labor to remove and replace a floor installed

between a policy that permits depreciation of both materials and labor and a policy that permits depreciation of materials only. A hypothetical recently discussed in *Mitchell v. State Farm Fire & Casualty Co.*, 954 F.3d 700, 706 (5th Cir. 2020), aptly summarizes the difference:

> [The insured's] interpretation of "Actual Cash Value" includes depreciation of only the *material* components of the roof. Suppose the hypothetical roof can be replaced for a cost of $5,000 in materials and $5,000 in labor—a $10,000 roof. Suppose that the destroyed roof was 10 years old and expected to last 20 years. Under [the insured's] interpretation, the Actual Cash Value would be $7,500, because $2,500 would be deducted in depreciation (half of the cost of the *materials*).

> By contrast, [the insurer's] interpretation of "Actual Cash Value" includes depreciation of both the materials *and* the labor in constructing the roof. Using the same example, [the insurer's] interpretation would yield an Actual Cash Value of $5,000, because $5,000 would be deducted in depreciation (half of the *total* cost of replacing the roof).

**¶10** Here, we are charged with stating the law governing the interpretation of the Walkers' Policy. "We accord words used in [insurance] policies their plain and ordinary meaning, examining the policy 'from the viewpoint of an individual untrained in law or business.'" *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 ¶ 10 (2018) (quoting *Desert Mountain Props. Ltd. v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 200 ¶ 14 (App. 2010)). "If a policy is subject to 'conflicting reasonable interpretations,' it is ambiguous, and we interpret it by examining, as pertinent here, the 'transaction as a whole.'" *Id.* (internal citation omitted) (first quoting *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 258 (1989); and then quoting *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397 ¶ 8

---

in 2010 that was damaged in 2022. We are not referring to the labor performed in 2010, which was included in the value of the floor before the loss. The parties do not dispute that valuation of the property pre-loss includes depreciation of both labor and materials because those two components cannot be separated once the floor has been constructed.

(2008)). "If an ambiguity remains, we construe it against the insurer." *Id.*; *see also Sec. Ins. Co. of Hartford v. Andersen,* 158 Ariz. 426, 428 (1988) ("Where ambiguity in an insurance contract exists, the policy will be construed against the insurer."); *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534 (1982) ("Where the language employed is unclear and can be reasonably construed in more than one sense, an ambiguity is said to exist and such ambiguity will be construed against the insurer.").

### 1. Methodologies for Determining Actual Cash Value

**¶11**        "Insurance contracts often fail to define 'actual cash value,' leaving that task to the courts." *Dickler v. CIGNA Prop. & Cas. Co.,* 957 F.2d 1088, 1097 (3d Cir. 1992). To that end, the "discussion about the depreciation of labor costs [when determining actual cash value] is not occurring in a vacuum." *Lammert v. Auto-Owners (Mut.) Ins. Co.,* 572 S.W.3d 170, 175–78 (Tenn. 2019) (collecting cases from multiple jurisdictions). Here, as in *Lammert*, "both sides have presented many cases supporting their divergent positions." *Id.* at 175. It is clear that the "question before us has been the subject of much litigation, and it has divided the state and federal courts." *Sproull v. State Farm Fire & Cas. Co.,* 184 N.E.3d 203, 210–16 ¶¶ 20–42 (Ill. 2021) (collecting cases from multiple jurisdictions regarding the depreciation of labor when determining actual cash value). As "state and federal courts have split on this issue," some "have adopted the view that labor can be depreciated" when determining actual cash value, *id.* at 211–12 ¶ 28, while others "have held that labor may not be depreciated" for varying reasons. *Id.* at 213 ¶ 33.

**¶12**        As the *Dickler* court observed, "[c]ourts confronting such contracts have defined the term 'actual cash value' in essentially three ways: 1) as fair market value[,] 2) as replacement cost less depreciation, and 3) according to the 'broad evidence' rule." 957 F.2d at 1097–99 (collecting cases from various jurisdictions with different methodologies of determining actual cash value in an insurance policy); *see also Lammert,* 572 S.W.3d at 174 ("[T]here are multiple methods for determining actual

cash value, including market value, replacement cost less depreciation, and the broad evidence rule.").[3]

**¶13** The relevant language in the Walkers' Policy states, "If **you** do not repair or replace the damaged covered property, **we** shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation." (Emphasis in original). Although the first sentence, standing alone, could arguably support a market-based valuation, we must read these two sentences together. *See Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co.*, 250 Ariz. 408, 411 ¶ 11 (2021) (noting that an "insurance policy is a contract" and we "interpret the terms in the broader context of the overall contract" (citation omitted) (internal quotation marks omitted)). The second sentence—"Actual cash value includes a deduction for depreciation"—modifies the meaning of the first sentence providing that Auto-Owners "shall pay the actual cash value of the property at the time of loss." When the two sentences are read together, we conclude the Policy adopts the replacement cost less depreciation ("RCLD") method for determining actual cash value.

**¶14** Courts have applied the RCLD methodology to homeowners' insurance policies containing language similar to the Policy here. In *Coppins v. Allstate Indem. Co.*, 857 N.W.2d 896, 899 ¶ 4 (Wis. Ct. App. 2014), the insurance policy "did not define 'actual cash value,'" but the policy "did provide some clues as to how 'actual cash value' would be calculated in the event of a covered loss." There, the policy provided that the insurer would "pay for a loss to [the] covered property on an actual cash value basis, meaning there may be a deduction for depreciation." *Id.* A separate endorsement similarly stated, "Loss to property insured by this policy . . . will be settled on an actual cash value basis. This means there may be a deduction for depreciation." *Id.* at 899 ¶ 5 (alteration in original).

---

[3] Auto-Owners acknowledges these differing methodologies, noting that "[c]ourts have created several approaches to resolving disputes about ACV, including the market-value method, the replacement-cost-less-depreciation method, and, most recently, the broad-evidence rule."

¶15            The *Coppins* court determined the policy's language that "there may be a deduction for depreciation" mandated use of the RCLD methodology:

> The policy language, the commonly-accepted definitions of "actual cash value" . . . and our directive to interpret the policy from the standpoint of a reasonable insured, all support a conclusion that actual cash value should have been calculated primarily by subtracting depreciation from the cost to replace the damaged materials.

*Id.* at 905 ¶ 30 (internal citation omitted).   Here, as in *Coppins*, "nothing in this policy would tip off an insured to the fact that 'broad evidence'" or "market value[] would be used to calculate the loss.   If [the insurer] planned to [use a different method] to determine coverage, the policy should have clearly said so."   *Id.* at 906 ¶ 31; *see also Lammert,* 572 S.W.3d at 171–73, 178–79 (analyzing a homeowner's insurance policy under the RCLD methodology where the policy stated "actual cash value includes a deduction for depreciation" and the parties agreed "the method used to calculate the actual cash value is replacement cost less depreciation"); *see also Dickler*, 957 F.2d at 1091, 1098 (concluding that an actual cash value definition that contained "less depreciation" language contemplated use of the RCLD methodology).

¶16            We further note that an Arizona Department of Insurance homeowner's insurance publication ("Homeowners Insurance Check-Up") defines "Actual Cash Value (ACV)" as "the cost to repair or replace the damaged property with materials of like kind and quality, less depreciation of the damaged property."   Ariz. Dep't of Ins., Homeowners Insurance Check-Up 2 (2015), https://difi.az.gov/sites/default/files/documents/files/Homeowners_Check_Up_04%202015.pdf.   This publication further supports an understanding, "from the viewpoint of an individual untrained in law or business," *Teufel*, 244 Ariz. at 385 ¶ 10 (quoting *Desert Mountain Props.*, 225 Ariz. at 200 ¶ 14), and "in light of the objective, reasonable expectations of the average insured," *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272 (1987), that the RCLD methodology would be used to determine actual cash value.

9

¶17        We conclude the Walkers' Policy, which fails to prescribe any other methodology for determining actual cash value, adopts the RCLD methodology.

2.    Does the RCLD Methodology Permit Depreciation of Labor?

¶18        We must next determine whether the RCLD methodology permits a deduction for depreciation of labor when determining actual cash value.    Several other courts of last resort have already concluded that labor is *not* depreciable when actual cash value is determined through the RCLD methodology.

¶19        In *Sproull*, the Illinois Supreme Court explained that "[s]everal state and federal courts have held that the language 'replacement cost less depreciation' would not necessarily indicate to a reasonable insured that labor would be depreciated in determining ACV." 184 N.E.3d at 219 ¶ 49.    Thus, when the method of determining actual cash value is replacement cost less depreciation, "depreciation may not be applied to the intangible labor component."    *Id.* at 221 ¶ 54 (quoting *Sproull v. State Farm Fire & Cas. Co.*, 172 N.E.3d 1186, 1198 ¶ 41 (Ill. App. Ct. 2020)).

¶20        In *Lammert*, the Tennessee Supreme Court held that "labor may not be depreciated when the insurance company calculates the actual cash value of a property using the replacement cost less depreciation method."    572 S.W.3d at 179.    Instead, "depreciation can only be applied to the cost of materials, not to labor costs."    *Id.*

¶21        Further, in *Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d 675, 676 (Ark. 2013), the policy provided that "[c]overed property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property," and the insurer calculated "the depreciation of the items requiring repair" in determining "actual cash value."    There, the Arkansas Supreme Court concluded it "simply cannot say that labor falls within that which can be depreciable." *Id.* at 679.

¶**22**　　　　And in *Bellefonte Insurance Co. v. Griffin*, 358 So. 2d 387, 389 (Miss. 1978), the Mississippi Supreme Court reviewed a policy that provided an insurer's liability was "what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation." The court concluded "the trial court was correct in disallowing proof of depreciation on repairs" (i.e., labor depreciation). *Id.* at 391; *see also Mitchell,* 954 F.3d at 706–07 (concluding an insurer may not depreciate labor where "Actual Cash Value" in policy means "cost of replacement less depreciation").

¶**23**　　　　In Arizona, "[i]f an insurer desires to limit its liability under a policy, it should employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Sparks,* 132 Ariz. at 535. Auto-Owners failed to draft its homeowner's insurance policy to expressly include depreciation of labor in the calculation of actual cash value. It chose not to define the terms "actual cash value" and "depreciation." We construe any resulting ambiguity against Auto-Owners. *See id.* at 536–37 (construing ambiguity against insurer where "the policy language . . . fall[s] far short of clearly and distinctly communicating to the insured the nature of the limitation asserted by defendants").[4]

¶**24**　　　　We are charged with interpreting insurance provisions "in light of the objective, reasonable expectations of the average insured." *Gordinier,* 154 Ariz. at 272 ("Where the contract terms . . . cannot be

---

[4]　We further observe that, since at least 2002, insurers have known of the disagreement about whether labor may be depreciated when determining actual cash value. *See Redcorn v. State Farm Fire & Cas. Co.,* 55 P.3d 1017, 1023 ¶ 10 (Okla. 2002) (Boudreau, J., dissenting) ("I would respond to the certifying court that in determining actual cash value of a residential roof using the replacement cost less depreciation method, labor costs may not be depreciated."); *see also Arnold v. State Farm Fire & Cas. Co.,* 268 F. Supp. 3d 1297, 1310 n.18 (S.D. Ala. 2017) ("[T]he defendant has not explained why it should be judicially protected from this foreseeable consequence of its own imprecise drafting regarding an issue of which it has been actually aware (as the defendant in *Redcorn*) since at least 2002. That the defendant scraped by with a 5-3 decision might well have prompted a reasonable insurer to consider defining ACV so as to eliminate any controversy.").

understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured."); *see also Apollo Educ. Grp.*, 250 Ariz. at 412 (noting the rule of construing ambiguous terms against the insurer "exists to protect ordinary consumer insurance purchasers"). Accordingly, we conclude that if a policy adopts the RCLD methodology for determining actual cash value, as the Walkers' Policy did here, the insurer is precluded from depreciating labor when determining the actual cash value of the covered loss.

## B. Applicability of the Broad Evidence Rule

**¶25**      We have also been asked whether the broad evidence rule is applicable in Arizona for the purpose of determining actual cash value.

**¶26**      As previously noted, courts charged with determining the meaning of actual cash value have defined that term in three ways: (1) as fair market value; (2) as RCLD; and (3) according to the "broad evidence" rule.   *See Dickler,* 957 F.2d at 1097; *Lammert*, 572 S.W.3d at 174.   The second certified question is now moot given our conclusion that the Walkers' Policy adopts the RCLD methodology, rather than the broad evidence rule.   *See Lammert,* 572 S.W.3d at 178 ("[W]hether Tennessee is a broad evidence state is not at issue because in this case, as the homeowners point out, the parties agreed that the actual cash value was to be calculated based on the replacement cost [less depreciation] method."); *see also Dickler,* 957 F.2d at 1100 (explaining the broad evidence rule "should not be considered by a factfinder where, as here, the parties have precluded application of the 'broad evidence' rule by defining actual cash value as replacement cost less depreciation").

**¶27**      Nonetheless, because the second certified question asked more generally whether "the broad evidence rule [is] applicable in Arizona," we clarify that our conclusion with respect to the Walkers' Policy does not bar application of the broad evidence rule under other homeowners' insurance policies in Arizona, and we provide guidance for when it may be applied.   First and foremost, the parties' policy terms will dictate the methodology for determining actual cash value where, as here, a court is able to discern which methodology the policy adopts.   *See Apollo Educ. Grp.*, 250 Ariz. at 411 ¶ 11 ("An insurance policy is a contract, and in

an action based thereon the terms of the policy must govern." (quoting *Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 517 (1967))).

¶28 But where the terms of a homeowner's insurance policy do *not* define actual cash value or the methodology to be used for determining it, we adopt the following approach. First, "[w]here market value is easily determined [for a covered loss], actual cash value is market value." *Henn v. Am. Fam. Mut. Ins. Co.*, 894 N.W.2d 179, 184 (Neb. 2017) (quoting *Olson v. Le Mars Mut. Ins. Co. of Iowa*, 696 N.W.2d 453, 458 (Neb. 2005)). Second, "if there is no market value, replacement or reproduction cost may be used." *Id.* Third, "failing the other two tests, any evidence tending to formulate a correct estimate of value may be used," which is the broad evidence rule. *Id.* at 184–85. The broad evidence rule provides that actual cash value may be determined by

> consider[ing] every fact and circumstance which would logically tend to the formation of a correct estimate of the building's value, including the original cost, the economic value of the building, the income derived from the building's use, the age and condition of the building, its obsolescence, both structural and functional, its market value, and the depreciation and deterioration to which it has been subjected.

*Id.* at 185 (quoting *Erin Rancho Motels v. U.S. Fid. & Guar. Co.*, 352 N.W.2d 561, 564–65 (Neb. 1984)). In sum, while the broad evidence rule is not applicable to the Walkers' Policy, it may apply where the terms of the policy do not dictate otherwise in the context of other homeowners' insurance policies in Arizona.

### III.  CONCLUSION

¶29 We answer the questions presented by the District Court as follows. Under the terms of the homeowner's insurance policy before us, an insurer may not depreciate the cost of labor when determining actual cash value and the broad evidence rule does not apply. However, we do not bar application of the broad evidence rule where the terms of the policy do not dictate otherwise in the context of other homeowners' insurance policies in Arizona.